207 Ga. App. 346 (1993)
427 S.E.2d 798
GEORGIA BAPTIST CHILDREN'S HOMES & FAMILY MINISTRIES, INC.
v.
ESSEX INSURANCE COMPANY.
A92A2136.
Court of Appeals of Georgia.
Decided February 1, 1993.
Reconsideration Denied February 15, 1993.
Glover & Davis, J. Littleton Glover, Jr., R. Keith Prater, for appellant.
Alston & Bird, Gerald L. Mize, Jr., Lori G. Cohen, for appellee.
BLACKBURN, Judge.
Essex Insurance Company (Essex) commenced this action against Georgia Baptist Children's Homes and Family Ministries, Inc. (GBCH), seeking declaration of its rights and obligations under a comprehensive general liability insurance policy it issued to GBCH. The trial court eventually granted summary judgment for Essex as to Essex's claims and several counterclaims asserted by GBCH, and denied GBCH's motion for summary judgment. This appeal followed.
The record shows that GBCH, a not-for-profit corporation affiliated with the Georgia Baptist Convention, operated three homes for abused, minor children as part of its family care ministries. In late 1989, it engaged the services of The Integrity Group, a company whose principal business was risk and loss control, to obtain liability insurance regarding its operation of the children's homes. Quotes for such a general liability insurance policy were obtained from Essex through the insurance agency of B. Jones & Associates, and eventually, effective December 16, 1989, Essex issued the policy in question.
In February 1991, GBCH was served with a complaint brought on behalf of a child who had been a ward at one of GBCH's facilities from around November 1989 until August 1990, and by the parents of the child. The complaint alleged that the child had been attacked by other residents at the facility as a direct result of GBCH's negligence in adequately protecting, supervising, controlling, and caring for the residents of the facility. In addition to compensatory damages, the plaintiffs sought punitive damages. Although the complaint did not specify, it is undisputed that the alleged attack suffered by the child was one of sexual abuse.
GBCH forwarded the complaint to Essex and requested defense and coverage as provided in the liability insurance policy. Essex subsequently filed for declaratory judgment that coverage for the claim was excluded under the policy.
1. The insurance policy, as originally received by GBCH, contained a short exclusion regarding sexual abuse. That exclusion provided that "it is agreed that such coverage as is provided by this policy shall not apply to any claim, demand and causes of action arising out of or resulting from either sexual abuse or licentious, immoral or sexual behavior intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or omission by, the insured, his employees, patrons or any causes whatsoever."
After its issuance of the policy to GBCH, Essex contacted B. *347 Jones & Associates, indicated that the above sexual abuse exclusion was obsolete, and instructed the agency to replace it with a revised exclusion. In addition to excluding coverage of any claim arising out of the transmission of any communicable disease, this revised sexual abuse exclusion disallows coverage for any claim of negligent hiring, placement, training or supervision arising from sexual abuse, which would appear to exclude coverage for the claim asserted against GBCH. Essex contends that this revised exclusion formed part of the insurance policy, which GBCH disputes because it neither negotiated for nor received the revised exclusion. In opposition to Essex's motion for summary judgment, GBCH submitted the affidavit of the principal with The Integrity Group, supporting GBCH's claim that the revised exclusion had never been forwarded to it, and Essex failed to refute it.
An insurer may amend, correct, alter, or do anything toward determining and completing the terms of an insurance policy before it is delivered to the insured and made final, even though the policy bears a date preceding the actual delivery date. Utica Mut. Ins. Co. v. Dunn, 111 Ga. App. 795 (143 SE2d 425) (1965). However, any attempt by the insurer to modify the terms of the policy after issuance of that policy requires some consideration flowing to the insured. Adair v. American Liberty Ins. Co., 116 Ga. App. 805, 806 (2) (159 SE2d 174) (1967). In this case, Essex's attempted revision of the sexual abuse exclusion represented an unauthorized unilateral modification of the insurance contract, and that revised exclusion may not be considered part of the policy.
The trial court, nevertheless, granted summary judgment for Essex and denied summary judgment for GBCH on the grounds that the short exclusion was unambiguous and excluded coverage for any causes of action arising out of an act of sexual abuse. GBCH contends that an ambiguity exists in the general concluding clause, "or any causes whatsoever," contained in the short exclusion and that, when construed against the insurer, the exclusion does not apply to the type of claim asserted against GBCH by the former resident and her parents. We agree.
The language of the exclusion is capable of the construction suggested by Essex and approved by the trial court. However, "[w]ords, like people, are judged by the company they keep." Anderson v. Southeastern Fidelity Ins. Co., 251 Ga. 556 (307 SE2d 499) (1983). Where the phrasing of an insurance policy is so confusing that an average policyholder cannot make out the boundaries of coverage, there is a genuine ambiguity. See Gary L. Shaw Builders v. State Auto Mut. Ins. Co., 182 Ga. App. 220, 224 (355 SE2d 130) (1987). In the instant case, the meaning of the exclusion's concluding phrase, "or any causes whatsoever," is far from clear.
*348 Assigning the concluding phrase the expansive scope urged by Essex conflicts with a standard rule of construction. "It is a well-recognized rule . . . that when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named; unless, of course, there is something to show that a wider sense was intended." Beavers v. LeSueur, 188 Ga. 393, 403 (3 SE2d 667) (1939). Applying this rule of construction, the general clause, "any causes whatsoever," would normally be understood to refer to persons of the same category as the named insured, its employees, or its patrons. We do not believe that children residents of GBCH's facility may reasonably be included in the group of individuals specified in the exclusion.
In moving for summary judgment, Essex also asserted two other exclusions contained in the policy: one disallowing coverage for any claim for "bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person"; and one excluding "claims, accusations, or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery. . . ." Essex contends that even if the sexual abuse exclusion did not serve to exclude coverage in this case, these two other exclusions pertaining to assault and battery would achieve that result. Had the policy not contained the specific exclusion regarding sexual abuse, Essex's reliance upon the more general assault and battery exclusion would have been well placed. However, the inclusion of that specific exclusion precludes application of the assault and battery exclusion to determine coverage for any claims involving sexual abuse. "A limited or specific provision of a contract will prevail over one that is more broadly inclusive. [Cit.]" Holtzclaw v. City of Dalton, 189 Ga. App. 650, 652 (377 SE2d 196) (1988).
These additional exclusions regarding assault and battery actually bolster GBCH's contention that the sexual abuse exclusion contains some ambiguity. Arguably, the language in the sexual abuse exclusion pertaining to omissions by the insured or its employees could be read to exclude acts of negligent supervision of the children who were residents at GBCH's facility. However, Essex's specific exclusion of negligent supervision claims arising out of an assault and battery suggests that its omission of a similar provision in the sexual abuse exclusion was deliberate. Similarly, Essex's attempt to revise the sexual abuse exclusion in this case itself suggests that Essex, despite its assertions to the contrary, was concerned that the original sexual abuse exclusion either did not exclude coverage for the type of claim at issue here or was ambiguous as to whether it did so.
*349 In the instant case, the presence of the ambiguity in the sexual abuse exclusion results in a conclusion as a matter of law that the policy did not exclude coverage for the type of claim asserted against GBCH by the former child resident and her parents. "Under Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning. OCGA § 13-2-2 (2). However, `if the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred.' OCGA § 13-2-2 (5). Georgia courts have long acknowledged that insurance policies are prepared and proposed by insurers. Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured." Claussen v. Aetna Cas. &c. Co., 259 Ga. 333, 334-335 (380 SE2d 686) (1989). Construing the ambiguity in the sexual abuse exclusion in this case against Essex, the policy did not exclude coverage for sexual abuse perpetrated by the children residents against another resident in GBCH's facility. For that reason, the trial court erred in granting summary judgment for Essex and in denying summary judgment for GBCH on the issues of coverage under the insurance policy.
2. In answering the complaint for declaratory judgment filed by Essex, GBCH asserted four counterclaims: one seeking damages for breach of contract; one seeking to impose coverage under a theory of promissory estoppel; one seeking damages for negligence, in the event the policy does not provide for coverage and a defense to the action filed against GBCH; and, also in the event that the policy does not provide coverage, one seeking damages for misrepresentation. GBCH also sought attorney fees pursuant to OCGA § 13-6-11.
Our holding that Essex's insurance policy did not exclude coverage for the type of claim asserted against GBCH eliminates the underlying basis for GBCH's counterclaims asserting promissory estoppel, negligence, and misrepresentation. The counterclaim for breach of contract requires finding that Essex's seeking declaratory judgment of its rights and obligations under the policy constituted a breach of that insurance contract. However, Essex did not actually deny coverage or its duty to defend under the policy. Indeed, had it done so, there would have been no "actual controversy" necessary to authorize a petition for declaratory judgment. OCGA § 9-4-2; see generally State Farm Mut. Ins. Co. v. Allstate Ins. Co., 132 Ga. App. 332 (208 SE2d 170) (1974). Rather, the entire purpose of Essex's petition for declaratory judgment was to resolve the uncertainty over the parties' rights and obligations under the insurance policy issued to GBCH, in accordance with OCGA § 9-4-1, and Essex's resort to that declaratory judgment procedure may not be regarded as a breach of the insurance contract.
*350 Concerning GBCH's claim for attorney fees, OCGA § 13-6-11 allows an award for expenses of litigation "where the defendant has acted in bad faith . . . has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. . . ." The record, however, contains no evidence to support such an award of attorney fees in this case. Nothing suggests that Essex's position that the insurance policy excluded the type of claim asserted against GBCH was anything less than genuine. That position was not an unreasonable one, and Essex's decision to utilize the declaratory judgment procedure designed for precisely this situation may not be regarded as stubbornly litigious or causing GBCH unnecessary trouble and expense. Accordingly, no award of attorney fees was authorized under OCGA § 13-6-11.
3. The civil action filed against GBCH also sought an award of punitive damages. It is undisputed that Essex's insurance policy issued to GBCH specifically excluded indemnification of any award for punitive damages. Accordingly, with respect to any liability for the payment of an award for punitive damages, the trial court's grant of summary judgment for Essex was proper.
Judgment affirmed in part, reversed in part. McMurray, P. J., and Cooper, J., concur.