860 P.2d 734

**NEW MEXICO PHYSICIANS MUTUAL LIABILITY COMPANY, Plaintiff–Appellee,**

v.

**David Sylvester LaMURE, Sr., M.D., Defendant–Appellant,**

and

**Lillian Gonzalez, a/n/f of Kristopher Gonzalez, Intervenor–Appellant.**

No. 20273.

Supreme Court of New Mexico.

Aug. 31, 1993.

Phil Brewer & Paul Snead, Paul Snead, Roswell, for appellant LaMure.

Anderson Carter, II, Las Cruces, Charles Dunn, Lubbock, TX, for appellant Gonzalez.

Kemp, Smith, Duncan & Hammond, A. Drew Hoffman, John P. Eastham, Albuquerque, for appellee.

## OPINION

FROST, Justice.

This appeal from a declaratory judgment requires us to determine whether an insurer must indemnify a physician under his medical malpractice insurance policies for liability resulting from allegations of criminal sexual assault. Plaintiff-appellee New Mexico Physicians Mutual Liability Company (the insurer) filed suit to establish nonliability for coverage under medical malpractice insurance policies issued to defendant-appellant, David S. LaMure, Sr., M.D. LaMure had been sued by Lillian Gonzalez on behalf of her minor son, Kristopher Gonzalez, for damages resulting from LaMure's sexual assault of Kristopher. Gonzalez intervened in this declaratory action. Granting summary judgment for the insurer, the district court held that LaMure's malpractice insurance did not cover damages resulting from the underlying sexual assault litigation and that the insurer was not obligated to indemnify LaMure. The district court specifically found that LaMure's acts were criminal and did not constitute "rendering or failing to render professional services" within the coverage provisions of his insurance. We affirm.

## FACTS

In 1991, LaMure was convicted for the sexual assault of Kristopher Gonzalez.[1]

---

**1.** LaMure's conviction was affirmed by the Court of Appeals in *State v. LaMure,* 115 N.M.

The conviction included five counts of criminal sexual contact of a minor, two counts of criminal sexual penetration, and a count of extortion. Specifically, LaMure was found guilty of touching or applying force to Kristopher's intimate parts by grabbing his groin, unlawfully and intentionally causing him to touch LaMure's penis, wrongfully compelling Kristopher to perform the act of fellatio on LaMure against his will by threatening to harm his family and impugn his reputation, and causing Kristopher to engage in fellatio by touching LaMure's penis to Kristopher's mouth through force or coercion.

Based upon the same acts of abuse against Kristopher that supported the criminal convictions, Lillian Gonzalez sued La-Mure in federal court for civil damages on behalf of her son in *Gonzalez v. LaMure*, No. CIV 90–0104 JC (D.C.N.M.1990).[2] The federal complaint alleged that on August 18, 1987, LaMure undertook to care and treat Kristopher for an infected thumb. Under the pretense of treating Kristopher for the infected thumb, LaMure forced Kristopher into homosexual behavior. La-Mure continued to engage in a homosexual relationship with Kristopher for eighteen months. With the exception of the first sexual assault, LaMure's abuse of Kristopher did not occur under the guise of medical treatment. The insurer financed La-Mure's defense in the federal action under an express reservation of rights until the district court in the present declaratory action ruled that it had no obligation to do so.

The insurer issued three medical malpractice policies to LaMure, identical in all respects but covering different periods of time continuously from December 1, 1986 to February 19, 1989. It is undisputed that the acts alleged in the federal complaint occurred within this period of time. Under the policy section entitled "Indemnity," the insurer agreed:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or personal injury resulting from rendering or failing to render, during the policy period, professional services by the insured, or by any person for whose acts or omissions the insured is legally responsible, performed in the practice of the insured's profession....

The policies also contained several express exclusions. The criminal acts exclusion stated:

> This policy does not apply ... [t]o liability of the insured arising out of the performance of a criminal act; provided, that this exclusion shall not apply with respect to defense of suits unless the insured is connected in the original prosecution based on such acts or omissions for which claim or suit is brought against the insured[.]

"Criminal act" is not defined in the policies, and the policies do not otherwise more specifically address the treatment of "criminal acts" resulting from rendering professional services.

Appellant LaMure and intervenor Gonzalez argue primarily that the federal complaint pleads malpractice covered by La-Mure's malpractice insurance. They also contend that the Medical Malpractice Act, NMSA 1978, §§ 41–5–1 to –29 (Repl. Pamp.1989 & Cum.Supp.1993), and public policy considerations compel a finding of coverage.

The insurer responds that under the express language of LaMure's policies, liability resulting from the federal complaint is not covered because LaMure's acts do not constitute "rendering or failing to render ... professional services by the insured." Coverage is also precluded, the insurer

61, 846 P.2d 1070 (Ct.App.1992), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993).

**2.** While this appeal was pending before us, a confidential stipulated judgment was entered in

the underlying federal action, *Gonzalez v. La-Mure.* Entry of the stipulated judgment does not affect this appeal or the analysis of the insurer's obligation to indemnify LaMure under his insurance policies.

claims, because LaMure's alleged acts are criminal and his malpractice policies expressly exclude coverage for liability resulting from criminal acts. The insurer maintains that such an insurance exclusion should be enforced because it is supported by the public policy of denying indemnification to an insured for his intentional criminal conduct.

## DISCUSSION

■ The central issue for review is whether the insurer is required to indemnify LaMure for damages resulting from the federal litigation. If the allegations of the federal complaint clearly fall outside the provisions of LaMure's professional liability insurance policies, indemnity by the insurer is not required. *See Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 114 N.M. 695, 697, 845 P.2d 789, 791 (1992). When a court relieves an insurer of liability under the noncoverage provisions of an insurance policy, the insurer is also relieved of any duty to defend the insured from lawsuits over the uncovered acts. *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 620, 642 P.2d 604, 606 (1982).

■ We interpret unambiguous insurance contracts in their usual and ordinary sense unless the language of the policy requires something different. *Bernalillo County Deputy Sheriffs*, 114 N.M. at 697, 845 P.2d at 791. An insurance policy should be construed as a complete and harmonious instrument designed to accomplish a reasonable end. *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992). The parties to an insurance contract may validly agree to extend or limit insurance liability risks. *Safeco Ins. Co. of Am. v. McKenna*, 90 N.M. 516, 519, 565 P.2d 1033, 1036 (1977). Thus, exclusions in insurance policy coverage provisions that are clear and unambiguous and that do not conflict with public policy expressed by statute will be enforced. *Jimenez v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 324, 757 P.2d 792, 794 (1988). In evaluating whether an exclusionary provision conflicts with a partic-

ular statute and is therefore void, our inquiry focuses on the legislative intent behind the statute. *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 328–29, 533 P.2d 100, 101–02 (1975).

■ An insurance policy provision is ambiguous if it is reasonably and fairly susceptible to different constructions. *Knowles*, 113 N.M. at 705, 832 P.2d at 396. While ambiguous policies should be construed liberally in favor of the insured, *Safeco*, 90 N.M. at 520, 565 P.2d at 1037, policies that are not ambiguous and do not contravene public policy must be enforced as written. *Security Mut. Casualty Co. v. O'Brien*, 99 N.M. 638, 641, 662 P.2d 639, 642 (1983). The fact that a particular policy contains a broad coverage provision followed by a specific coverage exclusion does not automatically render the policy ambiguous or invalidate the exclusion. *See Weldon v. Commercial Union Assurance Co.*, 103 N.M. 522, 524, 710 P.2d 89, 91 (1985). This is true as long as the exclusion is not so broad or nebulous that it swallows and effectively nullifies a broad insuring clause. *Knowles*, 113 N.M. at 707–08, 832 P.2d at 398–99.

LaMure's malpractice policies contain a broad coverage provision promising to indemnify him for personal liability resulting from "rendering professional services." This coverage clause is qualified by the specific exclusion from coverage of liability arising from criminal acts. These clauses are not ambiguous because they can be reasonably construed in only one way— liability from "rendering professional services" is covered unless it stems from "criminal acts." Our focus therefore turns to interpreting these operative contract terms in context.

Except for LaMure's first attack on Kristopher, LaMure's assaults did not occur under the guise or pretense of medical care or treatment and therefore cannot be attributed to the "rendering [of] professional services." Nor do we believe that Kristopher's injuries from LaMure's first sexual assault, although committed under the pretense of medical care, resulted from "ren-

dering professional services." Several other jurisdictions have addressed the question of whether a sexual assault on a patient by a health care professional arises or results from rendering "professional services" under the coverage provisions of professional liability insurance like La-Mure's. These cases generally fall into three categories.

The most common scenario involves a physician or dentist who sexually assaults a patient at his office during medical treatment or examination. These cases hold that "professional services" in professional liability insurance coverage clauses do not include sexual assaults on patients, regardless of the location of the assault or the pretense of medical care used by the insured to catch his victim unaware. The most frequently cited authority for this proposition is *Hirst v. St. Paul Fire & Marine Insurance Co.*, 106 Idaho 792, 796, 683 P.2d 440, 444 (Ct.App.1984). In *Hirst*, a physician who drugged and sexually assaulted a young male patient during the examination of a hand injury was not covered by his professional liability insurance because the assault did not constitute "professional services." Like many other cases interpreting medical malpractice insurance policies, *Hirst* adopts the definition of "professional services" articulated in *Marx v. Hartford Accident & Indemnity Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968). Defining "professional services" in a policy covering "malpractice ... in rendering or failing to render professional services," *Marx* states:

> Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind.... A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character

of the party performing the act, but to the act itself.

157 N.W.2d at 871–72 (citations omitted). Other decisions denying indemnification to the insured medical professional under similar facts and reasoning as *Hirst* include: *St. Paul Insurance Co. v. Cromeans*, 771 F.Supp. 349, 352–53 (N.D.Ala.1991) (denying indemnification under a malpractice policy covering "professional services" to a physician for his sexual abuse of patients, noting that all contracts insuring against damage from intentional misconduct are void as against public policy under applicable Alabama law); *Standlee v. St. Paul Fire & Marine Insurance Co.*, 107 Idaho 899, 693 P.2d 1101, 1102 (Ct.App.1984) (denying indemnification under facts similar to *Hirst* except that the assault did not involve drugs or occur in a medical facility); *Roe v. Federal Insurance Co.*, 412 Mass. 43, 587 N.E.2d 214, 218 (1992) (holding that a dentist's sexual assault of a patient in his office did not occur in rendering "professional services" within the scope of his liability insurance); *St. Paul Fire & Marine Insurance Co. v. Quintana*, 165 Mich. App. 719, 419 N.W.2d 60, 63 (holding that the sexual assault of a patient by an EEG technician was not "professional services" covered by professional liability insurance), *appeal denied*, 430 Mich. 885 (1988); *Smith v. St. Paul Fire & Marine Insurance Co.*, 353 N.W.2d 130, 132 (Minn.1984) (holding that malpractice insurance did not cover liability of an insured physician who sexually assaulted several young male patients since the physician's acts were not part of medical treatment); *Niedzielski v. St. Paul Fire & Marine Insurance Co.*, 134 N.H. 141, 589 A.2d 130, 133 (1991) (holding that a dentist who sexually assaulted a child in his office before filling her tooth was not covered by his insurance because "[r]easonable persons would not define 'professional services' as including either sexual contact or assault between a dentist and his patient"); *South Carolina Medical Malpractice Liability Insurance Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 354 S.E.2d 378, 381 (1987) (denying indemnification under malpractice insurance to a dentist who sexually assaulted

his patient); *Standard Fire Insurance Co. v. Blakeslee,* 54 Wash.App. 1, 771 P.2d 1172, 1177 (holding that professional liability insurance did not cover injuries to a patient who was drugged and sexually abused by her dentist because the harm was not caused in rendering "professional services"), *review denied,* 113 Wash.2d 1017, 781 P.2d 1320 (1989).

These cases confirm our view that La-Mure's first sexual assault of Kristopher, even though committed during an examination of Kristopher's thumb, did not constitute "rendering professional services" within the coverage provisions of his malpractice insurance. As noted in *Marx,* "professional services" in the context of malpractice insurance coverage do not include all acts of a professional. 157 N.W.2d at 871–72. Rather it is the professional nature of a particular act by an individual that qualifies conduct as "professional services." When LaMure stopped examining Kristopher's thumb and began sexually assaulting him, LaMure's rendering of professional services ended. We are confident that coverage for "professional services" was never intended to encompass this situation.

We note, however, that some courts, under a particular set of facts, are likely to find that professional liability insurance covers sexual abuse of medical patients. This second category of cases addresses professional liability coverage for the sexual assault, misconduct, or involvement by mental health care professionals, including psychiatrists, psychologists, and therapists, with their patients. Though these cases are somewhat divided, many have held that the misconduct causes harm resulting from "professional services" when evidence concerning transference and counter-transference is presented. The theory is that due to transference, an essential aspect of therapy involving the exchange of emotions between therapist and patient, and the intense and intimate nature of mental health treatment, sexual contact between therapist and patient is foreseeable when the health care professional does not properly handle transference and counter-transference. Because transference appears to be an integral part of therapy, these courts consider sexual misconduct by the therapist as arising from "professional services," and they find insurance coverage accordingly. *See, e.g., Aetna Life & Casualty Co. v. McCabe,* 556 F.Supp. 1342 (E.D.Pa. 1983); *St. Paul Fire & Marine Ins. Co. v. Mitchell,* 164 Ga.App. 215, 296 S.E.2d 126 (1982), *cert. denied* (Ga. Dec. 1, 1982); *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698 (Minn.1990); *Zipkin v. Freeman,* 436 S.W.2d 753 (Mo.1968). This group of cases involving mental health professionals and the transference phenomenon are distinguishable on their facts, and we decline to adopt their reasoning here.

The third category of cases, with a contingent of two, finds liability of the insurer when the act of assault by the health care professional is "inextricably intertwined" with health care treatment. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Asbury,* 149 Ariz. 565, 720 P.2d 540, 542 (Ct.App. 1986) (holding that a gynecologist who intentionally and improperly manipulated patients' genitalia during routine gynecological examinations was covered by his professional liability insurance because his tortious acts were "intertwined with and inseparable from the services provided"); *St. Paul Fire & Marine Ins. Co. v. Shernow,* 222 Conn. 823, 610 A.2d 1281, 1285 (1992) (holding that a dentist who over-gassed and sexually assaulted a patient in the dentist's chair was covered by his malpractice insurance because the dentist's medically negligent procedure was "inextricably intertwined and inseparable from [his] intentional conduct"). Like Justice Borden, who dissented in *Shernow,* we are uncertain of this test's workability or its support in public policy. Regardless of whether this sort of analysis is useful in other situations, we are certain that LaMure's medical treatment of Kristopher's thumb was not "inextricably intertwined" with his sexual assault of Kristopher such that the assault may reasonably be considered "professional services."

Even if LaMure's abusive acts did constitute "rendering professional services," the insurer still would not be liable because we

find the policies' criminal acts exclusions applicable and enforceable. The criminal acts exclusions in LaMure's policies apply to liability from criminal acts for which the insured is prosecuted. Though "criminal acts" are not expressly defined in the policies, it is reasonable for "criminal acts" to include violent felonies for which the insured is found guilty by a jury. Since the federal complaint is based upon acts of felonious criminal sexual assault for which LaMure was convicted and incarcerated, the criminal acts exclusions apply.

Gonzalez argues that criminal acts should be covered by malpractice insurance due to the public policy objective of the Medical Malpractice Act to compensate malpractice victims. Otherwise, she claims, victims of noncriminal medical malpractice will be compensated but victims of criminal malpractice will not, leaving individuals seriously harmed by physicians' misconduct without recourse. Thus, the criminal acts exclusions in LaMure's malpractice insurance should be void as a matter of public policy. Gonzalez adds that the criminal acts exclusions are ambiguous and that the insurance contract must therefore be construed against the insurer to cover the insured. We disagree.

The criminal acts exclusions are enforceable because they are clear, unambiguous, and unoffensive to public policy. *See Jimenez*, 107 N.M. at 324, 757 P.2d at 794. We have already explained why the policies' coverage provisions are consistent and unambiguous. Although New Mexico courts have not specifically addressed the validity of criminal acts exclusions in medical malpractice insurance, we have enforced intentional acts coverage exclusions. In *Safeco v. McKenna*, we upheld an exclusionary clause in a homeowner's policy for damages resulting from the intentional acts of the insured. We noted that such exclusionary clauses are designed to prevent indemnifying an insured for liability due to his or her own wilful or intentional wrongful conduct. *Safeco*, 90 N.M. at 519–20, 565 P.2d at 1036–37. In *Knowles*, we also approved the enforcement of intentional acts exclusions to deny indemnification to the insured

for his intentional wrongful acts, although we concluded under the specific facts of that case that the intentional acts exclusion in the personal umbrella policy was unenforceable because it was "repugnant" to the policy's broad insuring clause. 113 N.M. at 707–08, 832 P.2d at 398–99. Unlike the policy in *Knowles*, the criminal acts exclusions in LaMure's policies are not repugnant to the policies' insuring provisions because they do not effectively nullify coverage or reduce it substantially or unreasonably. Although criminal malpractice is not covered, a broad realm of infractions committed in rendering professional services is, including most varieties of what is traditionally considered malpractice. In other respects, our analysis parallels that of *Knowles*, as we interpret the criminal acts exclusions in LaMure's policies as valid and enforceable supported by the important public policy objective of refusing to indemnify an insured for his or her intentional wrongs.

Courts in other jurisdictions have enforced criminal acts exclusions in similar situations, and their opinions further persuade us that LaMure's acts, although they may constitute malpractice, should not be indemnified against because they are criminal. *See, e.g., Medical Mut. Liab. Ins. Soc'y v. Azzato*, 94 Md.App. 632, 618 A.2d 274, 280 (enforcing the criminal acts exclusion in a malpractice policy and denying indemnification to a physician who was liable for supplying and encouraging a patient's illegal drug abuse), *cert. denied*, 330 Md. 319, 624 A.2d 491 (1993); *Rivera v. Nevada Medical Liab. Ins. Co.*, 107 Nev. 450, 814 P.2d 71, 74 (1991) (enforcing the criminal acts exclusion in a malpractice policy of a gynecologist who raped a patient during an examination and rejecting the contention that malpractice insurance policies should be construed to protect the injured party); *see also Govar v. Chicago Ins. Co.*, 879 F.2d 1581 (8th Cir.1989) (enforcing sex acts exclusion in psychologist's malpractice policy when a patient's malpractice claim alleged that the insured had sexual relations with her negligently).

■ Gonzalez argues that LaMure's sexual assault of Kristopher, his patient, constitutes malpractice as a matter of law. Citing *Smith v. Klebanoff*, 84 N.M. 50, 499 P.2d 368 (Ct.App.), *cert. denied*, 84 N.M. 37, 499 P.2d 355 (1972), Gonzalez asserts that malpractice is defined as a departure from recognized standards of medical practice in the community and that sexual assault of a patient clearly falls within this definition.

This argument fails because it incorrectly assumes that if LaMure's acts constitute malpractice, they must be covered by his malpractice insurance. LaMure's professional liability policies do not define "malpractice" or otherwise purport to cover "malpractice"; coverage is defined in terms of liability resulting from "rendering professional services." Because the insurer's obligations emanate from LaMure's insurance contract, *see Knowles*, 113 N.M. at 704, 832 P.2d at 395, independent definitions of malpractice do not control the disposition of the coverage issue before us. LaMure's acts may very well meet the legal definition of malpractice, but this does not decide the debate over whether the insurer is contractually obligated to indemnify LaMure.

■ LaMure and Gonzalez contend that the Medical Malpractice Act expansively modifies the coverage provisions of LaMure's malpractice insurance policies to encompass LaMure's acts. They contend that the Act's definition of malpractice is intended to supplant the definition of malpractice in insurance contracts when coverage provisions conflict with the statutory purpose of the Act. To the contrary, the insurer urges that since the Act does not define "malpractice," and only defines "malpractice claim"[3] to establish the scope of administrative review by the New Mexico Medical Review Commission, the Act does not modify the scope of coverage of private insurance contracts, and it does not affect the Court's construction of LaMure's malpractice policies.

■ We agree that the Act does not alter our construction of LaMure's medical malpractice insurance contracts by statutorily modifying LaMure's insurance coverage or by expressing public policy conflicting with the criminal acts exclusions. "Malpractice claim" as defined by the Act relates to whether a claim sounds in medical malpractice for purposes of the procedural requirements and limitations on full recovery imposed by the Act. The Act evidences no intent to supplant or modify the coverage provisions of LaMure's malpractice insurance, either by invalidating its criminal acts exclusions or expanding its broad coverage provisions. The purpose of the Act is "to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." Section 41–5–2 (Repl.Pamp.1989). The Act is intended to increase the number of health care providers serving the public by facilitating their acquisition of professional liability insurance. The Act also seeks to promote the integrity of malpractice claims against health care providers by creating a system whereby legitimate claims are recoverable by the injured party. The relevant coverage and exclusion provisions of LaMure's policies are not inconsistent with the Act's objectives. Malpractice claims under the Act do not include claims of criminal sexual assault not committed in the course of rendering professional health care services. *Cf. Trujillo v. Puro*, 101 N.M. 408, 410, 683 P.2d 963, 965 (Ct.App.), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984) (finding that claims of intentional infliction of emotional distress and negligent misrepresentation are not "malpractice claims" under the Medical Malpractice Act).

---

**3.** "Malpractice claim" is defined in the Act as: [a]ny cause of action arising in this state against a health care provider for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care which proximately results in injury to the patient, whether the patient's claim or cause of action sounds in tort or contract, and includes but is not limited to actions based on battery or wrongful death.... Section 41–5–3 (Repl.Pamp.1989).

LaMure claims that the district court did not have sufficient evidence to determine if his acts constituted malpractice covered by his insurance because documentation of his conviction was improperly admitted into evidence under the rule of *Gray v. Grayson*, 76 N.M. 255, 256, 414 P.2d 228, 229 (1966).[4] Given this error, he asserts that there was no evidence regarding his conduct involving Kristopher before the district court and that summary judgment was improper.

Contrary to LaMure's contentions, evidence of his conviction was properly admitted, and there is no genuine issue of material fact concerning whether his acts constitute malpractice. In *Gray v. Grayson*, this Court stated that "absent a plea of guilty, proof of conviction of criminal charges is inadmissible in the trial of a subsequent civil action for tort arising out of the same act." *Id.* *Gray v. Grayson* is not applicable because LaMure's conviction was not admitted to prove his negligence. Rather, the conviction was admitted for the limited purpose of proving that LaMure's alleged misconduct constituted "criminal acts" within the criminal acts exclusions of his insurance policies. *Gray v. Grayson* does not prevent the use of evidence of conviction to aid this type of contract interpretation. Furthermore, our evaluation of insurance coverage centers on LaMure's insurance policies and the federal complaint, which, supported by evidence of LaMure's indictment and conviction, provides sufficient evidence regarding LaMure's alleged misconduct to resolve the coverage issue. Further evidence detailing LaMure's abuse of Kristopher and the basis of the federal malpractice claim is unnecessary to our legal analysis.

## CONCLUSION

LaMure's medical malpractice insurance does not cover his liability from the federal litigation because LaMure's sexual assault of Kristopher Gonzalez does not constitute "rendering professional services" within the coverage provisions of his policies, and his acts are criminal within his policies' valid coverage exclusions for liability arising from criminal acts. The insurer, therefore, is not required to indemnify LaMure for his liability in the federal litigation. Despite our sympathy for LaMure's victim, denying LaMure indemnification supports the public policy of preventing an insured from being shielded from the negative consequences of his crimes, and of enforcing fair private contracts as written absent conflicting statutorily expressed public policy.

Summary judgment is proper when the case presents no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. SCRA 1986, 1–056(C) (Repl.Pamp.1992). This appeal presents no issue of material fact, and for the reasons discussed above, the insurer is entitled to judgment as a matter of law. The grant of summary judgment is AFFIRMED.

**IT IS SO ORDERED.**

RANSOM, C.J., and MONTGOMERY, J., concur.

---

4. LaMure also argues, without citing legal authority, that it is inequitable to consider his conviction as evidence of the criminal nature of his acts while the appeal of his conviction is pending. The argument that the district court improperly considered LaMure's conviction due to the pendency of the appeal of the conviction is waived because it is unsupported by cited authority. *Lee v. Lee (In re Adoption of Doe)*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Furthermore, LaMure's conviction was affirmed by the time of our review. *State v. LaMure*, 115 N.M. at 61, 846 P.2d at 1070.