A94A2629. ST. PAUL FIRE & MARINE INSURANCE COMPANY v. ALDERMAN et al.
(455 SE2d 852)

POPE, Presiding Judge.
Plaintiff, St. Paul Fire & Marine Insurance Company, appeals from the trial court's grant of summary judgment to defendants, Margaret and Tim Alderman, in this declaratory judgment action.

Margaret Alderman was a patient of Julian Sellek, M.D. In January 1989, she saw Sellek for a urinary tract infection and for examination of a marble-sized cyst, which was under the skin between her vagina and right leg. According to Mrs. Alderman, the cyst was easy to feel on the outside of her leg, and she told Sellek that the cyst was on the surface. Despite having been told the above, during the examination, Sellek inserted his finger into Mrs. Alderman's vagina and began rubbing up and down as if he were trying to excite Mrs. Alderman. In response to Sellek's actions, Mrs. Alderman told Sellek that the cyst was not in her vagina. According to Mrs. Alderman, Sellek then asked her to step down onto the floor, at which point Sellek began massaging her clitoris. During this time, Sellek was breathing heavily, as if he was having a sexual experience. Sellek repeatedly ig-

nored Mrs. Alderman's comments that the cyst was on the surface of her leg and not in her vagina. Sellek continued to massage Mrs. Alderman until she finally pulled away from him and told him she must not have a cyst. Sellek subsequently called Mrs. Alderman back into the examining room purportedly to check her kidneys. He asked her to remove her shirt, and while looking and feeling in the area of her kidneys, reached up and removed her bra from her right breast.

The Aldermans filed a complaint for money damages against Sellek. Thereafter, plaintiff St. Paul, who provided professional liability insurance to Sellek, filed a declaratory judgment action seeking a determination as to its obligation, if any, to defend and indemnify Sellek. Sellek, the Aldermans and several other patients who allegedly were victimized by Sellek's sexual misconduct were named as defendants in the declaratory judgment action. Sellek defaulted in that action. Following this default, the Aldermans filed a motion for summary judgment. No motion for summary judgment was brought on behalf of the other defendant/patients. On June 22, 1994, the trial court granted the Aldermans' motion for summary judgment, concluding that St. Paul had a duty to defend and indemnify Sellek because Sellek's conduct was inalterably linked to his providing of professional medical services to Mrs. Alderman. St. Paul appeals from the trial court's grant of summary judgment to the Aldermans.

St. Paul contends that the trial court committed reversible error in determining that the injuries suffered by Mrs. Alderman due to Sellek's sexual misconduct were covered under the terms of the professional liability policy (the Policy) St. Paul provided to Sellek. We agree and reverse.

Under the terms of the Policy, St. Paul provided Sellek with protection against "professional liability claims" which might be brought against him in his practice as a physician or surgeon. The Policy also specifically states that Sellek's professional liability protection covered him for damages resulting from his providing or withholding of "professional services." Consequently, our analysis in this case must focus on the meaning of the term "professional services."

To begin, we note that this court has never addressed the meaning of "professional services" in a factual context like the one presented here. However, we do find guidance for our analysis in the case decisions of numerous other courts. In determining whether an insured's actions constitute the providing of "professional services," the majority of courts looks to the nature of the act the insured performed, rather than the title or status of the insured or the place where the act occurred. See *Prior v. S. C. Med. Malpractice Liability Ins. Joint Underwriting Assn.*, 407 SE2d 655, 657 (2) (S.C. App. 1991); *Niedzielski v. St. Paul Fire &c. Ins. Co.*, 589 A2d 130, 131-132 (1) (N.H. 1991); *Standard Fire Ins. Co. v. Blakeslee*, 771 P2d 1172,

1176 (3) (Wash. App. 1989). "The scope of 'professional services' does not include all forms of a doctor's conduct simply because he is a doctor." *Hirst v. St. Paul Fire &c. Ins. Co.*, 683 P2d 440, 444 (1) (Idaho App. 1984). "Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind." *Marx v. Hartford Accident &c. Co.*, 157 NW2d 870, 871 (3), (4) (Neb. 1968); see *Roe v. Fed. Ins. Co.*, 587 NE2d 214, 217 (Mass. 1992).

Applying the above principles, the vast majority of courts has concluded that no coverage exists under a professional liability insurance policy for claims involving sexual assault, abuse or harassment. See *New Mexico Physicians Mut. Liability Co. v. LaMure*, 860 P2d 734, 738 (N.M. 1993) (providing a summary of cases in which sexual misconduct was not covered); *Hirst*, supra, 683 P2d at 443-444. We agree with the majority viewpoint. "Damages resulting from [the] providing of professional services contemplates improper or incorrect medical treatment of a physical ailment by the insured doctor." (Punctuation omitted.) *Smith v. St. Paul Fire &c. Ins. Co.*, 353 NW2d 130, 132 (Minn. 1984). Sellek's actions in this case clearly do not constitute such medical treatment. Moreover, his actions in no way involved the application of any specialized learning or skills. Here, Sellek's actions were " 'solely for the satisfaction of (his) own prurient interests.' " Id.

We reject the Aldermans' contention that this case is governed by our holding in *St. Paul Fire &c. Ins. Co. v. Mitchell*, 164 Ga. App. 215 (296 SE2d 126) (1982). *Mitchell* specifically dealt with a psychiatrist's improper manipulation of the transference phenomenon. Id. at 216. By its very nature, the transference phenomenon involves the exchange of emotions between the therapist and patient. Due to the "intense and intimate nature of [such] mental health treatment, sexual contact between therapist and patient is foreseeable when the health care professional does not properly handle transference and counter-transference." *LaMure*, supra, 860 P2d at 739. *Mitchell* and the other cases relied upon by the Aldermans, which involve improper manipulation of the transference phenomenon, are clearly distinguishable on their facts from the case at bar, and we decline to adopt their reasoning here.

We also find the minority viewpoint as expressed in *St. Paul Fire &c. Ins. Co. v. Asbury*, 720 P2d 540 (Ariz. App. 1986) unpersuasive based on the facts of this case. In *Asbury*, a gynecologist who intentionally and improperly manipulated a patient's genitals during a routine gynecological exam was found to be covered by his professional liability policy because his tortious acts were "intertwined with and inseparable from the services provided." Id. at 542. In this case, Sel-

lek's alleged sexual probing and manipulation of Mrs. Alderman's vagina and clitoris clearly was not inextricably intertwined with his examination of the cyst that Mrs. Alderman repeatedly told him was on the surface near her right leg. Nor can it be said that the act of pulling down Mrs. Alderman's bra was inextricably intertwined with the purported examination of her kidneys.

In light of the foregoing analysis, we hold that the Policy does not cover Sellek's acts of sexual misconduct in this case, and therefore, St. Paul has no duty to defend or indemnify Sellek. Consequently, the trial court erred in granting the Aldermans' motion for summary judgment.

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal, as it is my view that sexual battery committed on the unsuspecting female patient by the physician during a medical examination is covered under the medical professional liability insurance policy issued by St. Paul in this case.

The policy informed the insured that it "provides protection against professional liability claims which might be brought against you in your practice as a physician or surgeon." Specifically, St. Paul promised individual coverage for "damages resulting from . . . [y]our providing or withholding of professional services." My examination of the policy reveals *no* exclusions for intentional acts or for sexual misconduct. Since the sexual batteries alleged in the underlying tort action took place during a medical examination, it is my view that, they fall within the coverage provided by the broad but nevertheless unambiguous language "providing or withholding professional services." See, e.g., *St. Paul Fire &c. Ins. Co. v. Mitchell*, 164 Ga. App. 215, 216 (1) (296 SE2d 126), where the whole court determined that the insurer had a duty to defend. See also *Ga. Baptist Children's Homes &c. Ministries v. Essex Ins. Co.*, 207 Ga. App. 346 (1) (427 SE2d 798), where an express exclusion for sexual behavior was nonetheless held to be ambiguous. Whether sexual battery ultimately is (or is not) medical malpractice does not control over the express terms of St. Paul's promise to provide liability coverage "for damages resulting from . . . [the insured's] providing or withholding of professional services." I respectfully dissent.

DECIDED MARCH 17, 1995 —

*Alexander & Vann, George R. Lilly II, Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler, Mark E. Robinson,* for appellant.

*Evans & Evans, Larry K. Evans, O. Wayne Ellerbee, Dodd & Turner, Roger J. Dodd, Langdale, Vallotton & Linahan, Samuel F. Greneker,* for appellees.