A09A0041. AUTO-OWNERS INSURANCE COMPANY v. STATE FARM FIRE AND CASUALTY COMPANY et al.
A09A0042. STATE FARM FIRE AND CASUALTY COMPANY v. KITTLES et al.
(678 SE2d 196)

MIKELL, Judge.

State Farm Fire and Casualty Company ("State Farm") filed a declaratory judgment action against its insured, Construction Technologies, Inc. ("CTI") and Kenneth Cribb, and others, including Dymytrk and Phyllis Kittles, Albany Tomorrow, Inc. ("ATI"), Water Gas and Light Commission of Albany ("WGLC"), Commerce and Industry Insurance Company, and ATI's insurer, Auto-Owners Insurance Company ("Auto-Owners"), seeking to determine its obligations in connection with a personal injury and loss of consortium action filed by the Kittles for injuries allegedly sustained by Dymytrk, an employee of WGLC, when he struck a live conduit wire at the Turtle Grove construction project in Albany, Dougherty County. Auto-Owners answered and filed a counterclaim and cross-claim, seeking a declaration that it had no duty to defend or indemnify ATI in the Kittles' lawsuit. State Farm and Auto-Owners moved for summary judgment, which the trial court denied. The Kittles then moved for summary judgment and State Farm and Auto-Owners renewed their motions for summary judgment. The trial court denied Auto-Owners' motion for summary judgment; granted State Farm's motion for summary judgment as to Phyllis Kittles' loss of consortium claim, but denied summary judgment on the remaining claims; and denied the Kittles' motion for summary judgment on the loss of consortium claim, but granted it as to the

---

[15] See also *Smith v. State*, supra.

remaining claims. The trial court ruled that the respective insurance policies did not exclude coverage for the claims asserted against CTI, Cribb, and ATI, and, therefore, Auto-Owners and State Farm have a duty to defend and indemnify their insureds. In these cross-appeals, Auto-Owners and State Farm appeal the trial court's ruling. Because the trial court erred in ruling that the policies' "professional services" exclusions did not apply, we reverse in both cases.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence in the light most favorable to the nonmovant.[2] So viewed, the record shows that ATI was formed by a group of private citizens as a nonprofit organization to help revitalize the downtown Albany area. Dougherty County contracted with ATI to oversee and manage the design, construction, and completion of a master urban renewal project, Albany Downtown/Riverfront Master Plan, which included the "Turtle Grove" playground.[3] ATI in turn contracted with CTI, a project management consultant company, and its principal, Cribb, to be the onsite construction manager of the entire project.[4] On March 6, 2003, WGLC was called to the Turtle Grove site to provide a water source for volunteer workers. Both Cribb and Tina Mitchell, ATI's on-site project manager, were on the site when WGLC was called. While working on the site, a WGLC employee ran over an electrical conduit with a backhoe, damaging the conduit. WGLC asked Cribb to determine whether or not the damaged conduit contained WGLC lines. Cribb examined blueprints and told WGLC that the lines belonged to WGLC. WGLC subsequently sent its employee Dymytrk Kittles to repair the damaged conduit. While sawing the damaged conduit, Dymytrk came in contact with a live wire, an explosion occurred, and Dymytrk was seriously burned, prompting the underlying personal injury action against ATI, CTI, Cribb, and others, as noted above. In their complaint, the Kittles allege that ATI was in control of the "Turtle Grove" construction site at the time of the accident, and that Cribb, in his capacity as CTI's employee/agent and ATI's agent, assured Dymytrk that the conduit contained no live

---

[1] OCGA § 9-11-56 (c).

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] Pursuant to its contract with Dougherty County, ATI had the following responsibilities: "[to] review and monitor the work and work product of any Professionals engaged to perform due diligence and other activities with respect to any Redevelopment Project, including . . . utility availability."

[4] As a condition of its contract with ATI, CTI and Cribb took out a business liability insurance policy with State Farm in 1999.

wires even though WGLC engineering personnel previously advised Cribb that the conduit contained live wires.

ATI and CTI/Cribb demanded indemnification and defenses under their respective business insurance policies. Auto-Owners and State Farm contend that they have no duty to defend or indemnify their insureds because they have "professional services" exclusions in their respective policies. Both policies provide as follows:

> 1. Business Liability[:] We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION SUPPLEMENTARY PAYMENTS.

ATI's policy with Auto-Owners provides the following exclusion with regard to "professional services":

> This insurance does not apply to: . . . "Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to: . . . (2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design or specifications; (3) Supervisory, inspection or engineering services.

And, CTI/Cribb's policy with State Farm provides the following exclusions with regard to "professional services":

> This exclusion does not apply to: . . . bodily injury, property damage or personal injury due to rendering or failure to render any professional services or treatments. This includes but is not limited to: [(a)] legal, accounting or advertising services; [(b)] engineering, drafting, surveying or architectural services, including preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; [(c)] supervisory or inspection services.

The trial court ruled that the respective insurance policies do not exclude coverage because (1) the underlying complaint does not assert a professional negligence claim against Cribb, but, rather, alleges that Cribb negligently conveyed the wrong information about

the condition of the conduit to Dymytrk's supervisor; and (2) since neither policy defines the term "professional services," the exclusionary language is unclear and ambiguous.

"The relevant rules of contract construction guide the analysis of these contract provisions. In construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other."[5] "[E]xclusions [are] strictly construed against the insurer and in favor of coverage."[6] Additionally,

> [a]n insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy. Where a policy imposes a duty to defend even if the allegations are groundless, false or fraudulent, courts look to the allegations of the complaint to determine whether a liability covered by the policy *is asserted*. Thus, an insurer is obligated to defend even where the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage. To excuse the duty to defend, the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.[7]

Keeping these principles in mind, we address the insurers' enumerations of error relating to the trial court's denial of their respective motions for summary judgment.

### Case No. A09A0041

1. Auto-Owners contends that the trial court erred in finding that it has a duty to defend or indemnify ATI because, under the unambiguous terms of the policy, the Kittles' complaint arises from ATI's alleged failure to perform a professional service, i.e., properly manage, inspect, and supervise the work conducted at the Turtle Grove project. We agree.

The complaint in this case alleges that ATI was in control of the

---

[5] (Footnote omitted.) *York Ins. Co. v. Williams Seafood of Albany*, 273 Ga. 710, 712 (1) (544 SE2d 156) (2001).

[6] (Footnote omitted.) Id.

[7] (Citations and punctuation omitted; emphasis in original.) *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn.*, 288 Ga. App. 355, 356 (654 SE2d 207) (2007).

YALE LAW LIBRARY

Turtle Grove construction premises when Cribb,[8] in his capacity as construction supervisor for the Turtle Grove project, wrongly advised WGLC supervisors and Dymytrk that the damaged conduit contained no live wires. We do not agree with appellees' contention that the complaint alleges nothing more than simple negligence on the part of Cribb for miscommunicating a message to WGLC personnel and Dymytrk. On the contrary, the claims asserted against ATI in the Kittles' complaint relate to its alleged failure to properly supervise and manage construction at the Albany Downtown/Riverfront project — more specifically the Turtle Grove project — pursuant to its agreement with Dougherty County.

Moreover, contrary to the trial court's finding, we hold that the exclusion at issue is not ambiguous. We considered a similar exclusion in *Batson-Cook Co. v. Aetna Ins. Co.*,[9] and held that the allegations of the complaint fell clearly within the policy exclusion for professional services.[10] In that case the complaint alleged that

> appellant breached its duties as construction manager by, among other enumerated items, *"directing other contractors and subcontractors to use and move the swings and other equipment and materials rented by or belonging to plaintiff,"* causing plaintiff to incur expenses for rentals on idle equipment, compensation to idle laborers, additional start-up and resetting of equipment, laborers and materials and for *"damage to swings and other equipment during periods of unauthorized use."*[11]

While the policies in that case also contained an exclusion for "liability assumed by the insured under any contract or agreement," this Court found that allegations in the complaint fell within the professional services exclusion because they related to appellant rendering or failing to render services as construction manager of the project.[12] Implicit in that holding is a finding that the exclusion is unambiguous. *Batson-Cook* controls the outcome of this case. Accordingly, the trial court erred in denying Auto-Owners' motion for summary judgment.

---

[8] The complaint does not refer to Cribb by name, but rather, refers to the construction supervisor, or the agent and employee of Defendant CTI acting on behalf of Defendant ATI.

[9] 200 Ga. App. 571 (409 SE2d 41) (1991).

[10] Id. at 574.

[11] (Emphasis in original.) Id. at 573-574.

[12] Id. at 574.

756

*Case No. A09A0042*

2. In three related enumerations, State Farm similarly contends that the trial court erred in denying its motion for summary judgment because Cribb was performing supervisory services which are excluded under the terms of CTI's and Cribb's policy. Our analysis with respect to the applicability of Auto-Owners' policy's professional services exclusion clause applies with equal force to State Farm's exclusionary clause.

Appellees contend that the complaint merely alleges that Cribb wrongfully informed WGLC employees that the conduit lines were not live, which is not a "professional services" act envisioned by the exclusion. Appellees further allege that the Kittles have not sued CTI or ATI for their negligent preparation, approval or failure to prepare or approve any maps, drawings, opinions, reports, surveys, change orders, designs or specifications, nor for negligent supervision, inspection or engineering, and they assert that the evidence establishes that as the construction supervisor, Cribb was not required to know any information, or to impart any information to any third party related to power lines. We are not persuaded by these arguments.

It is clear under the exclusion that a professional must perform more than an ordinary task to furnish a professional service; the task must arise out of the acts specific to the individual's specialized knowledge or training.[13] An ordinary task does not become a "professional service" merely because it is performed by a professional.[14] In this case, Cribb and his company were hired by ATI to supervise its multimillion dollar project. As the construction supervisor, Cribb and CTI were directly responsible for supervising activities on the site to ensure that the work was performed safely, properly, and timely. WGLC employees consulted Cribb about the conduit precisely because he was the construction supervisor with specialized knowledge of the job site and the construction industry. WGLC would not have asked Cribb to determine the condition of the conduit unless it was under the impression that he had some level of specialized knowledge or training. While we reiterate that not every action a

---

[13] See *St. Paul Fire &c. Ins. Co. v. Alderman*, 216 Ga. App. 777, 779 (455 SE2d 852) (1995) (whole court).

[14] See id. at 778 ("[i]n determining whether an insured's actions constitute the providing of 'professional services,' the majority of courts look to the nature of the act the insured performed, rather than the title or status of the insured or the place where the act occurred") (citations omitted). Compare *Cunningham v. Middle Ga. Mut. Ins. Co.*, 268 Ga. App. 181, 184-185 (3) (601 SE2d 382) (2004) (professional services exclusion did not apply to exclude coverage for fire caused by roofing supervisor, who repaired roof at his pastor's rental home as a favor; roofing is a trade or occupation, not a profession).

professional takes will come within the exclusion, whether or not Cribb drew upon his professional knowledge, experience, and training is not the proper inquiry; the proper inquiry is whether he should have drawn upon that knowledge, experience, and training. In this case, he should have. As State Farm persuasively stated in its brief, "[w]hether as a supervisor Cribb assured [Dymytrk] no danger existed, or whether his failure to identify from the blueprints the nature of each conduit as was his responsibility," these acts clearly fall within the definition of "professional services."

In this case, WGLC employees sought Cribb's knowledge, as supervisor of the site, and it is precisely Cribb's failure to properly perform his supervisory function that caused Dymytrk's injuries. Because Cribb's actions fall within the "professional services" exclusion, the trial court erred in denying State Farm's motion for summary judgment.

In light of our ruling that State Farm has no duty to defend or indemnify CTI or Cribb in the underlying action, we need not determine whether Cribb provided timely notice of the incident as required by the policy.

*Judgments reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 12, 2009 

*Talley, French & Kendall, Michael C. Kendall, Maureen E. Murphy,* for appellant.

*Hall, Booth, Smith & Slover, Virginia N. Hall, Anthony A. Rowell,* for appellees.