EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen Elsa Rivera Matos, *et al.* <br><br> Recurridos <br><br> v. <br><br> Estado Libre Asociado de Puerto Rico, *et al.* <br><br> Recurridos <br><br> v. <br><br> North Janitorial Services, Inc. <br><br> Recurrida <br><br> v. <br><br> Triple S. Propiedad, Inc. y ACE Insurance Company <br><br> Peticionarios | Certiorari <br><br> 2020 TSPR 89 <br><br> 204 DPR ____ |

Número del Caso: CC-2018-51

Fecha: 24 de agosto de 2020

Tribunal de Apelaciones:

     Panel Integrado por su presidenta la Jueza Vicenty Nazario, el Juez González Vargas y el Juez Rivera Torres

Abogados de la parte peticionaria:

     Lcdo. Francisco J. Colón Pagán
     Lcda. Margarita Rosado Toledo

Abogados de la parte recurrida:

     Lcdo. Manuel A. Pietrantoni
     Lcdo. Omar Andino Figueroa
     Lcda. Karena Montes Berríos

Materia: Derecho de Seguros - Aplicación de la exclusión denominada "servicios profesionales", según consignada en una póliza en exceso tipo sombrilla expedida por la aseguradora a favor de la asegurada.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmen Elsa Rivera Matos, *et al.*<br><br>    Recurridos<br><br>       v.<br><br>Estado Libre Asociado de Puerto Rico, *et al.*<br><br>    Recurridos<br><br>North Janitorial Services, Inc.<br><br>    Recurrida<br><br>       v.<br><br>Triple-S Propiedad, Inc. y ACE Insurance Company<br><br>    Peticionarios | CC-2018-51 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 24 de agosto de 2020.

Los hechos que dan origen a este caso se remontan a los años 2011, 2012 y 2013 cuando, aproximadamente sesenta y tres (63) pacientes del Hospital de la Universidad de Puerto Rico, Dr. Federico Trilla, sito en el Municipio de Carolina (Hospital), se contagiaron con una bacteria durante su hospitalización, lo que les causó la muerte. A través de este recurso se nos presenta para consideración una controversia novel relacionada con la aplicación de la exclusión denominada "Servicios Profesionales"

("*Professional Services*"), según consignada en una póliza en exceso tipo sombrilla ("*umbrella*") expedida por ACE Insurance Company (ACE o aseguradora) a favor de North Janitorial Services, Inc. (North Janitorial o asegurada), la compañía contratada para proveer servicios de limpieza en el Hospital.[1]

## I.  TRASFONDO PROCESAL

A continuación resumimos el tracto procesal del caso, limitado a los eventos relevantes a la controversia que nos corresponde dilucidar.

El 7 de octubre de 2013 los familiares de alrededor de sesenta y tres (63) pacientes que fallecieron en el Hospital a causa de una infección bacteriana sometieron una *Demanda* en daños en contra del Gobierno de Puerto Rico, varias entidades gubernamentales y North Janitorial.

Posteriormente, los demandantes presentaron una *Segunda Demanda enmendada* en la que, aparte de aumentar el número de demandantes y otros detalles que no afectan nuestra determinación en el día de hoy, esencialmente reiteraron sus reclamaciones iniciales.

North Janitorial contestó la *Segunda demanda enmendada* negando cualquier tipo de responsabilidad frente a los demandantes, a la vez que presentó una *Demanda contra terceros* conforme a la Regla 59.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V, en contra de Ace y Triple-S

---

[1]  Para efectos de este recurso, las pólizas expedidas por Ace Insurance Company (ACE) durante este periodo son idénticas, por lo que nos referimos a ellas conjuntamente como "póliza".

Propiedad, Inc. (Triple-S),[2] quien había emitido una póliza primaria a su favor. (Caso Núm. FDP2013-0323 (402)). En lo concerniente a Ace,[3] North Janitorial argumentó que, ante la denegatoria de Triple-S de proveerle defensa, Ace venía obligada a costear los gastos de la asegurada por tal concepto.

Ace sometió su *Contestación a demanda contra terceros* y negó que tuviese obligación de proveerle defensa a North Janitorial en el caso. A esos efectos, sostuvo que su póliza, al ser en exceso, sólo se activaba una vez agotada la póliza primaria de Triple-S. Planteó, además, que aplicaban las exclusiones de "Hongo o Bacteria" ("*Fungi or Bacteria*") y de "Servicios Profesionales" según provistas en la póliza, por lo que no existía cubierta.

Una vez recibida la respuesta de ACE, la asegurada presentó una moción de sentencia sumaria. Acompañó su solicitud con copia de las pólizas de ambas aseguradoras y una declaración jurada del Sr. Carlos Alfonso Picaporte Adanez, corredor de seguros de la firma Marsh Saldaña, dando fe de la autenticidad de las mismas.

Reiteró que, a base de las alegaciones de la demanda, existía la posibilidad de cubierta bajo las pólizas expedidas por Triple-S y Ace a su favor, lo cual activaba la obligación de **ambas** de proveerle defensa. Rechazó,

---

[2]   Cabe señalar que la póliza de seguro de Triple-S Propiedad, Inc. proveía cubierta por "Commercial Property", "Commercial General Liability" y "Commercial Crime". (**Ap. 124**).

[3]   La póliza de seguro de Ace consistía de una "Commercial Umbrella Liability Policy". (**Ap. 293**).

además, la aplicación de las cláusulas de exclusión utilizadas por las dos (2) aseguradoras para negarle los costos de la defensa en el pleito.

ACE se opuso a la solicitud de North Janitorial a la vez que presentó su propia solicitud de sentencia sumaria parcial. Indicó que, al ser su póliza una en exceso, el deber de defensa no se activaba hasta tanto se hubiesen agotado los límites de la póliza primaria, en este caso la póliza emitida por Triple-S, cosa que no se había evidenciado. De otra parte, añadió que las reclamaciones por las cuales se solicitaba defensa no estaban cubiertas por su póliza, ya fuese por la exclusión de "Hongo o Bacteria", o la de "Servicios Profesionales". En apoyo a su solicitud, ACE sometió la declaración jurada del Sr. Alfonso García Dávila, su representante de reclamaciones, quien detalló el tracto de las pólizas correspondientes para los años relevantes a su vigencia.[4]

---

[4] ACE incluyó, además, copia de una presentación en formato "*power point*" de la Dra. Nora Chea, de la División de Promoción de Calidad en el Cuidado de la Salud (*Division of Healthcare Quality Promotion*) de los Centros para el Control y la Prevención de Enfermedades (*Centers for Disease Control and Prevention*, comúnmente conocidos como "CDC"), que es un bosquejo de la investigación intitulada "*Investigation of Multidrug Resistant Acinetobacter Baumannii at a Hospital in Puerto Rico, Jan-Aug, 2013*". Asimismo, sometió una página de internet en la que se identifican varias compañías integrantes del "*Fuller Group*" en Puerto Rico, entre las que se encuentra North Janitorial, con un breve resumen de los servicios que cada una de ellas provee. Según ACE, North Janitorial se promocionaba en la referida página como una compañía especializada en el mantenimiento de facilidades de salud. Sin embargo, al atender los méritos de la solicitud de sentencia sumaria de ACE, no tomaremos en consideración el escrito en formato "*power point*" ni la página de internet del "*Fuller Group*", pues ninguno de los dos cuenta con las garantías necesarias de admisibilidad que exige la Regla 36.3(a)(4) de Procedimiento Civil de 2009, 32 LPRA Ap. V.

A base de lo anterior, ACE solicitó al tribunal que desestimase la *Demanda contra tercero* instada por North Janitorial en su contra.

North Janitorial respondió e insistió que ambas aseguradoras debían de sufragar sus gastos de representación legal y costos relacionados. Asimismo, se opuso a la petición de adjudicar el asunto de cubierta sumariamente según propuesto por ACE. A esos efectos, argumentó que era prematuro disponer de la controversia concerniente a la cubierta de la póliza de ACE pues este asunto dependía de la evaluación y eventual resolución de las reclamaciones de los demandantes. Alegó, que en la alternativa, correspondía posponer la disposición sumaria en torno a la obligación de cubierta hasta completar el descubrimiento de prueba en el caso.

En su respuesta a la solicitud de sentencia sumaria de ACE, North Janitorial admitió las siguientes aseveraciones, según propuestas por la aseguradora en la aludida moción, las que posteriormente fueron acogidas como parte de las *Determinaciones de hechos* en la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia:

. . . . . . . .

24. North Janitorial se **promueve** como una compañía especializada que se **dedica a la limpieza de instituciones de salud, y ofrece servicios de personal especializado que cumple con las normas de la industria.** (Énfasis nuestro, escolio omitido).

25. North Janitorial **fue contratada para llevar a cabo servicios especializados de limpieza de las facilidades del Hospital** y lleva más de 10 años proveyendo esos servicios en dichas facilidades. (Énfasis nuestro, escolio omitido).

. . . . . . . .

El 9 de diciembre de 2016 el Tribunal de Primera Instancia dictó *Sentencia Parcial* mediante la cual ordenó la desestimación de la *Demanda contra terceros* iniciada por North Janitorial en contra de sus aseguradoras, Triple-S y ACE. Primeramente, descartó la aplicación de la exclusión de "Hongo o Bacteria" para las dos (2) aseguradoras. No obstante, resolvió que la exclusión de "Enfermedad Transmisible" ("*Communicable Disease*") provista en la póliza de Triple-S, sí operaba, por lo que no se activaba el deber de la aseguradora primaria de proveer representación legal ni defensa a North Janitorial. De igual forma, encontró que los servicios de mantenimiento y limpieza ofrecidos por North Janitorial en el Hospital constituían "Servicios Profesionales" por lo que quedaban excluidos de cobertura en la póliza en exceso. Consiguientemente, determinó que tampoco en el caso de ACE existía un deber de sufragar los costos de la defensa legal de la asegurada. Por último, la jueza a cargo del caso ordenó que se registrara la *Sentencia Parcial* como un dictamen **final** conforme a lo dispuesto en la Regla 42.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V.

El Tribunal de Primera Instancia se negó a reconsiderar su decisión, por lo que North Janitorial recurrió ante el Tribunal de Apelaciones. En su escrito de *Apelación* la asegurada cuestionó las determinaciones del foro primario concernientes a la falta de cubierta por razón de las cláusulas de exclusión de "Enfermedad Transmisible" en la póliza de Triple-S y de "Servicios Profesionales" en la póliza de ACE, así como el rechazo de su reclamo al derecho a defensa legal. ACE y Triple-S sometieron sus respectivos alegatos en oposición ante el foro apelativo intermedio.[5]

El 30 de junio de 2017 el Tribunal de Apelaciones dictó *Sentencia* mediante la cual revocó el dictamen apelado. Entendió que existían hechos materiales en controversia que impedían aplicar la exclusión de "Enfermedad Transmisible" consignada en la póliza de Triple-S por lo que la aseguradora primaria estaba obligada a proveerle defensa a North Janitorial.

En cuanto a ACE, concluyó que persistían interrogantes en torno a si algunos de los trabajos de limpieza para los cuales North Janitorial fue contratada constituían servicios profesionales. Indicó que, para poder dilucidar

---

[5] En sus escritos, ambas aseguradoras incluyeron argumentos en apoyo a la aplicación de la exclusión de "Hongo o Bacteria" ("*Fungi or Bacteria*"). Sin embargo, esta exclusión había sido descartada por el Tribunal de Primera Instancia en su *Sentencia Parcial* final y ninguna de las dos (2) aseguradoras había solicitado revisión de esta determinación ante el Tribunal de Apelaciones. Tampoco esta exclusión formaba parte de los errores señalados por North Janitorial Services, Inc. (North Janitorial) en su recurso de apelación, por lo que esta determinación en particular no es objeto de este recurso.

esta controversia, "ACE tenía que presentar evidencia que demostrara el conocimiento, adiestramiento o habilidades especializadas requerida a los empleados de [North Janitorial] para realizar todas las labores de limpieza". *Sentencia* pág. 28. Señaló que el contrato de mantenimiento o limpieza entre la asegurada y el Hospital era crucial sobre este aspecto pero no constaba copia en los autos. Advirtió, además, que no se había llevado a cabo un descubrimiento de prueba adecuado en torno a este asunto por lo que no correspondía concluir que aplicaba la exclusión de "Servicios Profesionales".

El Tribunal de Apelaciones declinó reconsiderar su determinación.

A pesar de que ambas aseguradoras presentaron sus respectivas solicitudes de *certiorari* ante este Foro, denegamos la expedición del recurso iniciado por Triple-S[6] y acogimos únicamente la petición de ACE.[7]

ACE señaló cuatro (4) errores en su escrito, los que resumimos de la siguiente manera. Primeramente, cuestionó el rechazo de la exclusión de "Servicios Profesionales". Asimismo, adujo que el Tribunal de Apelaciones se equivocó al no analizar y aplicar la exclusión de "Hongo o Bacteria" provista en la póliza de ACE. Como tercer error, planteó que no procedía dictar sentencia sumaria a

---

[6] Véase *Resolución* de 9 de febrero de 2018 en el recurso CC-2017-894.

[7] Véase *Resolución* de 16 de marzo de 2018.

favor de North Janitorial fundamentado en que existe la posibilidad de que la asegurada esté protegida por la póliza de ACE. Por último, argumentó que el Tribunal de Apelaciones no podía descartar las determinaciones de hecho del foro primario cuando estaban sostenidas por hechos no controvertidos.

Procedemos a atender únicamente el primer error, concerniente a la exclusión de "Servicios Profesionales", por ser dispositivo del recurso.

## II. Derecho Aplicable

### A. El seguro

En ocasiones recientes, hemos reconocido el alto interés público con el que está investido el negocio de seguros en Puerto Rico, "debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos" y "la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad". R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017) (citando a Natal Cruz v. Santiago Negrón et al., 188 DPR 564, 575 (2013)). Por esas razones, los seguros cumplen la función social de atenuar los riesgos inherentes de las relaciones comerciales, al amortiguar los giros violentos de incertidumbre propios del mercado, aminorar sus efectos y propiciar el crecimiento estable de la economía. R.J. Reynolds v. Vega Otero, supra.

En concreto, el contrato de seguro se define como "aquel por el que una persona se obliga a indemnizar a

otra si se produce un suceso incierto previsto". Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. Consecuentemente, "su propósito es indemnizar y proteger al asegurado mediante el traslado del riesgo a la aseguradora si ocurre un evento específicamente pactado en el contrato". R.J. Reynolds v. Vega Otero, *supra*, pág. 707 (citando a Integrand Assurance v. CODECO *et al.*, 185 DPR 146, 162 (2012)).

Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro. Art. 11.140(1) del Código de Seguros, 26 LPRA sec. 1114(1). Conforme dispone el propio Código de Seguros, en primera instancia las cláusulas de una póliza se interpretarán de manera global, examinando el conjunto total de las disposiciones, términos y condiciones vigentes a la fecha que se juzgue relevante. Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Véanse, además, R.J. Reynolds v. Vega Otero, *supra*; Viruet *et al.* v. SLG Casiano-Reyes, 194 DPR 271 (2015).

En consecuencia, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. Jiménez López *et al.* v. Simed, 180 DPR 1 (2010); S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009); Echandi Otero v. Stewart Title, 174 DPR 355 (2008). De igual forma se examinarán las cláusulas desde la óptica de una persona normal de inteligencia promedio que fuese a adquirir el seguro.

S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48 (2011). De este modo, se garantiza que el asegurado que adquiere una póliza reconoce el alcance de la protección del producto que ha comprado. Íd.

Los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas, ambigüedades o sea susceptible de diferentes interpretaciones. R.J. Reynolds v. Vega Otero, *supra*; Echandi Otero v. Stewart Title, *supra*; S.L.G. Francis-Acevedo v. SIMED, *supra*.

No obstante, hemos resuelto que, debido a que el contrato de seguro es uno de adhesión, redactado en su totalidad por el asegurador, las cláusulas dudosas o ambiguas deberán interpretarse liberalmente en beneficio del asegurado para hacer cumplir el designio intrínseco de la póliza que es dar protección al asegurado. Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880 (2012); S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009); Monteagudo Pérez v. ELA, 172 DPR 12 (2007).

Al evaluar el alcance de la protección brindada por una póliza es igualmente necesario examinar si existen cláusulas de exclusión en el contrato mediante las cuales la aseguradora exceptúa de la cubierta determinados eventos, riesgos o peligros. Viruet *et al.* v. SLG Casiano-Reyes, *supra*; Natal Cruz v. Santiago Negrón *et al.*, *supra*; Jiménez López v. Simed, *supra*.

Como regla general, las exclusiones son desfavorecidas por lo que deben de interpretarse restrictivamente en contra del asegurador y de este modo resguardar la esencia propia del seguro, que no es otra cosa que la de ofrecer la mayor protección al asegurado. Viruet *et al.* v. SLG Casiano-Reyes, *supra*; Natal Cruz v. Santiago Negrón *et al.*, *supra*; Maderas Tratadas v. Sun Alliance *et al.*, *supra*.

Ahora bien, similar a la interpretación del resto de la póliza, "si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podrá responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados". Viruet *et al.* v. SLG Casiano-Reyes, *supra*; Natal Cruz v. Santiago Negrón *et al.*, *supra*; Maderas Tratadas v. Sun Alliance *et al.*, *supra*.

Por último, nos parece conveniente aclarar un asunto puntual en torno al litigio de seguros. Primeramente, corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión. Véase A.D. Windt, Insurance Claims and Disputes, 6ta ed., St. Paul, Minn., Ed. Thompson Reuters, 2013, Sec. 9.1, págs. 9-2 y 9.6 (2013). Véanse, además, Echandi Otero v. Stewart Title, *supra*; Martínez Pérez v. U.C.B., 143 DPR 554 (1997).

## B.  Servicios profesionales

Hemos resuelto que, en ausencia de una definición del término "servicios profesionales" como parte de una cláusula de exclusión, utilizaremos su acepción legal. Viruet *et al.* v. SLG Casiano-Reyes, *supra*. En este contexto, puntualizamos que "un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializado". Íd., pág. 280. La conducta profesional se destaca porque demanda el uso de habilidades "predominantemente intelectuales o mentales, no físicas o manuales". Íd., págs. 280-281. Asimismo, requiere "el uso de discernimiento, según criterios inculcados mediante estudios o a base de algún conocimiento especializado". Íd., pág. 281. Consiguientemente, "quedan excluidas las actividades que envuelven simplemente tareas físicas, manuales o clericales". Íd. "Por último, es importante señalar que la exclusión de servicios profesionales no se limita a profesiones tradicionales tales como abogados, médicos, arquitectos e ingenieros". Íd.

Ahora bien, conforme han dispuesto tribunales de Estados Unidos,[8] hay acciones que, aunque no requieren de conocimientos especializados, por constituir parte

---

[8] Anteriormente hemos utilizado como precedente persuasivo jurisprudencia estadounidense en materia de seguros. Véase Monteagudo Pérez v. E.L.A., 172 DPR 12, 20 esc. 2 (2007).

integral del proceso de brindar servicios profesionales, les aplica esta exclusión. Véase A.D. Windt, op. cit., Sec. 11:16, págs. 11-339 – 11:340.

Así, por ejemplo, en Estate of Tinervin v. Nationwide Mut. Ins. Co., 23 So.3d 1232 (Fla. 4th DCA 2019), se designó como un servicio profesional la omisión de la esposa de un médico al no traerle a su atención oportunamente los resultados de laboratorio de un paciente. El tribunal concluyó que las labores en el consultorio de su esposo, aunque administrativas, constituían parte integral de los servicios profesionales ofrecidos en la oficina médica.

De igual forma se consideró que la acción de inyectar una sobredosis de un sedante a una niña para realizar un estudio radiológico, ejecutada por un técnico, era parte integral de los servicios médicos profesionales provistos por el centro radiológico y caían dentro de la exclusión de la póliza. Ducanville Diagnostic Ctr., Inc. v. Atl. Lloyds Ins. Co. of Texas, 875 S.W.2d 788 (Tex. App.- Eastland 1994).

De manera análoga se decidió que, aunque el transponer los resultados de una prueba de hepatitis se considere una labor clerical, este trámite forma parte integral del proceso de realizar dichas pruebas por lo que se considera un servicio profesional para efectos de la exclusión de servicios profesionales. Alpha Therapeuric Corp. v. St.

Paul Fire and Marine Ins. Co., 890 F.2d 368 (11th Cir. 1989).

De igual forma se ha determinado que, en ocasiones, las tareas ordinarias también pueden calificarse como servicios profesionales si son esenciales a las gestiones de un profesional. Véase Atlantic Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P., 982 S.W.2d 472 (Tex. App. 1998).

A esos efectos, en Bohreer v. Erie Ins. Group, 475 F.Supp.2d (E.D. Va. 2007), el tribunal resolvió que la negligencia del personal al adulterar e identificar erróneamente los restos cremados, cualificaba como un servicio profesional debido a que la reclamación estaba inextricablemente entrelazada con el servicio contratado.

Igualmente, en Assurance Co. of Am. v. Am. Registry of Radiologic Technologists, 64 F.Supp.3d 1289, 1299, esc. 5 (D. Minn. 2014), el tribunal encontró que ciertas actividades clericales relacionadas con una investigación dirigida a certificar a un técnico cardiovascular, eran necesarias para efectuar adecuadamente el servicio profesional de acreditación, por lo que les aplicaba la exclusión de servicios profesionales.

## C.  Sentencia sumaria

El propósito de la sentencia sumaria es disponer ágilmente de aquellos casos en que no estén presentes hechos materiales en controversia que requieran de la celebración de un juicio. Rodríguez García v. UCA, 200

DPR 929 (2018); Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664 (2018); Savary *et al.* v. Mun. de Fajardo *et al.*, 198 DPR 1014 (2017).

La Regla 36.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, detalla el mecanismo aplicable para las partes solicitar que se dicte sentencia sumaria a su favor y también para que la parte adversa se oponga a la solicitud. Rodríguez García v. UCA, *supra*; Roldán Flores v. M. Cuebas *et al.*, *supra*; Meléndez González *et al.* v. M. Cuebas, 193 DPR 100 (2015). En ausencia de una controversia de hechos materiales, el tribunal dictará sentencia, de proceder en Derecho. Rodríguez García v. UCA, *supra*; Savary *et al.* v. Mun. de Fajardo *et al.*, *supra*.

Al momento de revisar solicitudes de sentencia sumaria, los tribunales revisores se encuentran en la misma posición que el Tribunal de Primera Instancia. Roldán Flores v. M. Cuebas *et al.*, *supra*; Meléndez González *et al.* v. M. Cuebas, *supra*.

De igual forma, en el proceso de evaluar una sentencia sumaria dictada por el foro primario, los tribunales revisores vienen llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3. Además, deberán comprobar que, de existir hechos en controversia, el juez que dictó sentencia sumaria los haya consignado. En el caso de que no se encuentren hechos materiales en controversia,

igualmente procede revisar *de novo* si se aplicó el Derecho correctamente a la controversia presentada. <u>Roldán Flores v. M. Cuebas *et al.*</u>, *supra*; <u>Meléndez González *et al.* v. M. Cuebas</u>, *supra*.

**III. Aplicación de exclusión de "Servicios Profesionales"**

Como parte de su recurso, ACE señala que el Tribunal de Apelaciones erró al no conceder su solicitud de sentencia sumaria y concluir que en este caso existen controversias de hechos esenciales que impiden aplicar la exclusión de servicios profesionales provista en la póliza.

Primeramente, ACE sostiene que la <u>definición</u> de servicios profesionales según consignada en la póliza, es <u>suficiente</u> para exceptuar la cubierta en este caso. Por las razones que esbozamos a continuación, descartamos esta aseveración. Veamos.

Es un hecho incontrovertido que, para los periodos alegados en la demanda, ACE expidió una póliza que contiene un endoso denominado "*Professional Liability*" mediante el cual se incorporó una exclusión a la cubierta provista en la póliza. Esta disposición establece lo siguiente:

**EXCLUSION – PROFESSIONAL LIABILITY**

**SCHEDULE**

<u>**Description of Professional Services**</u>:

**JANITORIAL SERVICES**

. . . . . . .

This insurance **does not apply** to "bodily injury," "property damage," "personal injury", or "advertising injury" arising out of the providing or failure to provide <u>**the professional services described in the Schedule above**</u>, by any insured or any person whose acts the insured is legally liable. (Énfasis nuestro).  Póliza Núm. 47PR701181, pág. 40.  (**Ap. 332**).

La cláusula anteriormente citada meramente alude a **"Servicios de limpieza"** ("*Janitorial Services*") como la conducta profesional excluida.  Ahora bien, no se ofrece ningún otro dato o referencia que explique en detalle cuál es el comportamiento que suprime la protección del seguro.  Es decir, el asegurado no queda advertido adecuadamente sobre aquellas actuaciones en concreto que constituyen la conducta excluyente.  Por consiguiente, en este caso no contamos propiamente con una definición que podamos interpretar para resolver si aplica o no la exclusión.

De otra parte, es importante destacar que en la primera página de la póliza se identifica a la parte asegurada como Fuller Brush Co. of PR y el **tipo de negocio del asegurado** ("*Business of Insured*") se reseña como

"**Servicios de limpieza**" ("*Janitorial Services*").**9** (**Ap. 293**).

Es decir, se registró exactamente el mismo término para describir, tanto la naturaleza de las actividades de negocio del asegurado, como los servicios profesionales referentes a la exclusión antes transcrita.

Bajo estas circunstancias, la interpretación literal de la exclusión, según propone ACE, convertiría la póliza en prácticamente inoperante puesto que exceptuaría automáticamente todos los trabajos propios de la empresa.

A la luz de lo antes expuesto, resulta evidente que no contamos con una definición o con directrices suficientes que nos permitan analizar el término "servicios profesionales" en el marco del contrato de seguro de ACE. Anteriormente, en Viruet *et al*. v. SLG Casiano-Reyes, *supra*, indicamos los parámetros relevantes para adjudicar qué tipo de conducta constituye "servicios profesionales" cuando este término no aparece definido en la póliza.

Sobre este particular, ACE argumenta que las funciones de mantenimiento y limpieza prestados por North Janitorial al Hospital requieren de un conocimiento especializado que los cualifica como servicios profesionales. Por su parte, North Janitorial aduce que las alegaciones de los demandantes están basadas únicamente en labores manuales

---

**9** Cabe notar que en todo momento ACE ha aceptado que North Janitorial es un asegurado bajo su póliza.

tales como, limpiar sábanas y sacar la basura, las cuales no están comprendidas dentro de la referida exclusión.

Como primer paso para determinar si la exclusión de "Servicios profesionales" aplica a determinada situación, debemos enfocarnos en la **naturaleza de la conducta imputada**. Por consiguiente, es menester examinar las acciones u omisiones en las que se fundamenta la reclamación de los demandantes en contra de North Janitorial, para resolver si éstas son parte integral o de alguna manera están asociadas con la prestación de servicios profesionales.

En cuanto al rol de la asegurada en relación con el Hospital, la *Segunda demanda enmendada* dispone lo siguiente:

> La entidad North Janitorial Services, Inc. es una corporación creada conforme a las leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada y quien **al momento de los hechos tenía bajo su control, cuidado, manejo, encargo y responsabilidad los trabajos de limpieza, mantenimiento y <u>procedimientos de esterilización de habitaciones, instalaciones y equipo</u> en el Hospital** […] y quien es responsable por los hechos que a continuación se describen. [….]. (Énfasis nuestro). *Segunda demanda enmendada*, *Sec. I, Partes*, párr. 71. (**Ap. 83-84**).

Luego se mencionan situaciones específicas que evidencian la falta de higiene imperante en diversos lugares del Hospital. Así, por ejemplo, se indica que el cuarto de aislamiento "se encontraba en condiciones deplorables […] era un total desastre. La limpieza era

inexistente, se encontraba desaseado, con presencia de sábanas utilizadas con marcas de excremento viejo, permeaba un intenso olor desagradable y asqueante (sic), habían bandejas utilizadas con residuos de comida. La higiene era inexistente". *Segunda demanda enmendada*, *Sec.* II, *Hechos*, párr. 1. (**Ap. 85**).

En otra ocasión, los familiares de un paciente relatan que la "higiene en el ambiente era pésima". *Segunda demanda enmendada*, *Sec.* II, *Hechos*, párr. 2. (**Ap. 85**). Asimismo, se describió que en la habitación 522 "el baño estaba muy sucio y con un fuerte olor a orín". *Segunda demanda enmendada*, *Sec.* II, *Hechos*, párr. 15. (**Ap. 91**). De igual forma se expuso que "[e]l cuarto lucía sucio y falto de higiene. El personal sólo sacaba la basura una vez al día y allí permanecían las batas vomitadas de un día para otro". *Segunda demanda enmendada*, *Sec.* II, *Hechos*, párr. 42. (**Ap. 102**).

Luego, en la parte final del pliego, se resume la negligencia de las partes demandadas en torno a la falta de higiene en el Hospital lo que, según se alega, **provocó el origen del brote bacteriano.**[10]

Son importantes en este contexto las admisiones de la asegurada en su respuesta a la solicitud de sentencia sumaria de ACE, concernientes al tipo de trabajo al que

---

[10] También se menciona la negligencia posterior de los demandados al no tomar las medidas correctivas necesarias para evitar el contagio y propagación de la bacteria. Véase *Segunda demanda enmendada*, *Sec. III*, *Negligencia*, párr. 8 y 9. (**Ap. 1065-1066**).

ésta se dedica y las responsabilidades para con el Hospital.

Primeramente, North Janitorial **admitió que es una entidad dedicada específicamente a la limpieza de instituciones de salud y cuenta con servicios de personal especializado que cumple con las normas de la industria.**

Además, North Janitorial aceptó que su **contrato** era precisamente "para llevar a cabo **servicios especializados** en las facilidades del Hospital" donde llevaba sobre diez (10) años proporcionando estos servicios. (Énfasis nuestro).

Por otro lado, al examinar en conjunto las alegaciones de la *Segunda demanda enmendada*, podemos concluir que en este caso en particular, los demandantes **no** están exigiendo resarcimiento por daños debidos a la condición sórdida de las habitaciones o porque las facilidades o equipo del Hospital se encontraban en condiciones "deplorables". Tampoco sus causas de acción surgen como consecuencia de daños acaecidos por accidentes resultantes de pisos mojados o tropiezos con equipos de limpieza.

Más bien, sus reclamos están fundamentados en **la falta de higiene imperante y la inadecuada esterilización** en el Hospital lo que alegadamente provocó que una bacteria se propagara sin control y segara la vida de más de sesenta (60) de sus seres queridos. En otras palabras, no estamos frente a actos o eventos de negligencia aislados e independientes uno del otro, sino ante un curso de

conducta sistémico, incompatible con la **obligación general de brindar servicios especializados de limpieza al Hospital.**

No podemos perder de perspectiva que la higiene de los hospitales exige unos parámetros de limpieza rigurosos.[11] Ciertamente, no es lo mismo limpiar una residencia que un hospital donde su propia naturaleza facilita la congregación de una extensa variedad de gérmenes que generan un potencial serio de contagio y propagación.

Cónsono con lo anterior, la empresa dedicada a la limpieza de un hospital tiene que realizar su trabajo responsablemente de principio a fin. Es decir, la pulcritud debe prevalecer a todo nivel. En este sentido, la responsabilidad de preservar las condiciones higiénicas del lugar constituye un cúmulo indivisible. No se puede, como pretende North Janitorial, fragmentar las funciones de los últimos eslabones en la cadena de limpieza de la obligación comprensiva de brindar servicios profesionales, que es precisamente a lo que la asegurada se comprometió con el Hospital. Por lo tanto, en casos como el que nos

---

[11] Existen múltiples publicaciones alertando sobre la importancia de mantener unos niveles adecuados de higiene en los hospitales para evitar de este modo la propagación de microorganismos que pueden ocasionar brotes de contagio. Véase, por ejemplo, Centers for Disease Control and Prevention (CDC), Guidelines for Environmental Infection Control in Health-care Facilities (2003 rev. julio 2019), https://www.cdc.gov/infectioncontrol/guidelines/environmental/index.html (última visita 22 de febrero de 2020); CDC Guideline for Disinfection and Sterilization in Healthcare Facilities, (2008 rev. mayo 2019), https://www.cdc.gov/infectioncontrol/guidelines/disinfection (última visita 22 de febrero de 2020); D.E. Karageorgopoulos y M.E. Falagas, Current control and treatment of multi-resistant *Acinetobacter baumannii* infections, 8 Lancet Infect. Dis. pág. 751 (2008), www.thelancet.com/infection (última visita 22 de febrero de 2020).

ocupa, en que afloró un brote bacteriano a gran escala en el Hospital, los diferentes componentes de las labores de limpieza y mantenimiento, deben ser evaluados desde una perspectiva holística.

Así pues, bajo las circunstancias específicas consignadas en las alegaciones de la demanda, concluimos que en este caso la responsabilidad imputada a North Janitorial surge de la alegada abdicación de la responsabilidad contraída con su cliente de realizar **servicios especializados de limpieza** en las facilidades del Hospital y no de los actos particulares o servicios rutinarios de los empleados de mantenimiento. En este contexto, las acciones u omisiones del personal de limpieza constituyen una parte integral y necesaria del servicio profesional contratado, y no pueden desvincularse de esa responsabilidad asumida por North Janitorial como sugiere la asegurada.

En cuanto al trámite procesal, somos conscientes de que, como en cualquier caso de sentencia sumaria, no podrá negarse cubierta bajo la exclusión de servicios profesionales si existe controversia sobre hechos materiales. Véase Arnette v. NPC Services, Inc., 808 So.2d 798 (La. App. 1st Cir. 2002).

En consecuencia, a base de lo anteriormente expresado, concluimos que no existe controversia fáctica que impida resolver el asunto planteado en este recurso conforme a los criterios que discutimos anteriormente. Tomando en

consideración los términos del contrato de seguro, los cuales no están en disputa, así como las admisiones de North Janitorial decretamos que, a la luz del derecho aplicable, las reclamaciones en la *Segunda demanda enmendada* están fundamentadas en "Servicios profesionales" exceptuados de cubierta en la póliza de ACE.

Por consiguiente, procedía dictar sentencia sumaria a favor de la aseguradora en este caso.

## IV.   Conclusión

Por los fundamentos antes expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones de 30 de junio de 2017 y se reinstala la *Sentencia Parcial* del Tribunal de Primera Instancia de 30 de septiembre de 2016, en lo concerniente a ACE.

Se dictará Sentencia de conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmen Elsa Rivera Matos, *et al.*<br><br>      Recurridos<br><br>           v.<br><br>Estado Libre Asociado de Puerto Rico, *et al.*<br><br>      Recurridos<br><br>North Janitorial Services, Inc.<br><br>      Recurrida<br><br>           v.<br><br>Triple-S Propiedad, Inc. y ACE Insurance Company<br><br>      Peticionarios | CC-2018-51 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 24 de agosto de 2020.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, se revoca la *Sentencia* del Tribunal de Apelaciones emitida el 30 de junio de 2017 y se reinstala la *Sentencia Parcial* del Tribunal de Primera Instancia de 30 de septiembre de 2016, en lo concerniente a ACE Insurance Company.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre sin Opinión escrita. La Jueza Presidenta Oronoz Rodríguez disiente con Opinión escrita. El Juez Asociado señor Colón Pérez disiente sin Opinión escrita. La Jueza Asociada señora Pabón Charneco no interviene.


                    José Ignacio Campos Pérez
                 Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carmen Elsa Rivera Matos, *et al.*<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, *et al.*<br><br>Recurridos<br><br><br>North Janitorial Services, Inc.<br><br>Recurrida<br><br>v.<br><br>Triple-S Propiedad, Inc. y ACE Insurance Company<br><br>Peticionarios | CC-2018-51 | *Certiorari* |

La Jueza Presidenta ORONOZ RODRIGUEZ emitió una Opinión disidente.

En San Juan, Puerto Rico, a 24 de agosto de 2020.

No estoy de acuerdo con la determinación de este tribunal de que los servicios de limpieza que North Janitorial brindaba al hospital constituyen servicios profesionales y que, por tanto, están excluidos de la póliza que ACE Insurance Company (ACE) expidió a su favor. Según se ha establecido, un servicio profesional es aquel que se realiza utilizando conocimientos especializados y habilidades que son predominantemente intelectuales. En la

demanda a North Janitorial se le imputó ser negligente al realizar tareas de limpieza ordinarias y manuales. Por lo tanto, correspondía a la aseguradora demostrar que, en el descargue de esas labores, North Janitorial empleaba alguna habilidad intelectual y conocimiento especializado. En vista de que ACE no presentó evidencia alguna para probar que los servicios de limpieza que brindaba North Janitorial eran servicios profesionales que estaban excluidos de la póliza, no procedía validar la exclusión. Conforme al análisis que procede, disiento respetuosamente.

## I.

Las cláusulas de exclusión limitan la cubierta de una póliza de seguro al excluir determinados eventos, riesgos o peligros. Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 899 (2012); Echandi Otero v. Stewart Title, 174 DPR 355, 370 (2008). Para que una cláusula de exclusión sea válida, esta debe ser clara, específica, libre de ambigüedades y detallar la situación o riesgo que se excluye. Así se alerta al asegurado sobre los eventos particulares que quedan fuera de la cubierta. Maderas Tratadas v. Sun Alliance *et al.*, supra, pág. 899; Marín v. American Int'l Ins. Co. Of P.R., 137 DPR 356, 362 (1994). Este tipo de cláusula se desfavorece toda vez que la finalidad primordial de un seguro es proteger al asegurado. Maderas Tratadas v. Sun Alliance *et al.*, supra, pág. 899; S.L.G. Francis- Acevedo v. SIMED, 176 DPR 372, 388 (2009). Por consiguiente, **se deben interpretar restrictivamente contra el asegurador.** Maderas Tratadas v. Sun Alliance *et al.*, supra, pág. 899; S.L.G. Francis- Acevedo v. SIMED,

supra, pág. 388; Echandi Otero v. Stewart Title, supra, págs. 370-371; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 902 (1994). Los contratos de seguros son además contratos de adhesión, por lo que se deben interpretar liberalmente a favor del asegurado. Maderas Tratadas v. Sun Alliance *et al.*, supra, págs. 898-899; Echandi Otero v. Stewart Title, supra, págs. 370. Así, **le corresponde a la aseguradora probar que una exclusión anula la cubierta de la póliza**. Echandi Otero v. Stewart Title, supra, pág. 378.

La Opinión del tribunal interpreta la cláusula de exclusión aquí en controversia a la luz de lo resuelto en Viruet *et al.* v. SLG Casiano- Reyes, 194 DPR 271 (2015). Allí, se examinó una póliza de seguro que excluía de cubierta "cualquier servicio profesional de todo tipo o naturaleza". Íd., pág. 276. Como la cláusula no definió qué se consideraba un servicio profesional para efectos de la póliza se determinó que "en aquellos casos en que la póliza no incluye una definición del término 'servicios profesionales' se utiliza su acepción legal". Íd., pág. 280. De esa manera se definió qué constituía un servicio profesional y las habilidades que requiere ese tipo de servicios.

Los tribunales han definido servicios profesionales como cualquier actividad comercial que requiera: (1) el uso del discernimiento a base de un conocimiento, labor o destreza especializada y (2) habilidades que sean predominantemente intelectuales en lugar de físicas. Íd., págs. 280-281; GRE Ins. Grp. v. Metro. Bos. Hous. P'ship,

Inc., 61 F.3d 79, 84 (1st Cir. 1995) (citas omitidas). Al añadir el segundo requisito, la jurisprudencia limita sustancialmente el alcance de lo que los tribunales deben considerar como servicios profesionales en el contexto de exclusiones en pólizas de seguro. Así, no toda actividad comercial que está dirigida a suplir una necesidad específica en el mercado puede considerarse un servicio profesional. Aunque ciertamente ese tipo de actividad requiere un conocimiento particular dirigido a lograr ese objetivo, eso no es suficiente para calificar una actividad como un "servicio profesional" en términos jurídicos, pues la aseguradora debe demostrar además que la actividad en cuestión requiere habilidades predominantemente intelectuales en lugar de físicas. Viruet et al. v. SLG Casiano- Reyes, supra.

Es por ello que varios tribunales han establecido que las tareas inherentes a una ocupación deben requerir un adiestramiento especial antes de catalogarla como un servicio profesional. Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc., 803 F. Supp. 2d 339, 346-47 (E.D. Pa. 2011) ("Failing to 'monitor the premises, including patient rooms, during night hours and to be cognizant of the whereabouts of the residents,' does not require the use or application of special learning or training. Nor does patrolling the premises"). Finalmente, es importante resaltar que, al determinar si una actividad constituye un servicio profesional, no se debe mirar el título o la naturaleza de quien realiza la actividad, sino la actividad

en sí. <u>Marx v. Hartford Accident & Indemnity Co.</u>, 183 Neb. 12, 157 N.W.2d 870, 872 (1968) ("In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself").

## II.

Hoy nos corresponde resolver si la cláusula de exclusión de servicios profesionales en la póliza que ACE expidió a favor de North Janitorial aplica a los hechos de este caso. Para resolver nos correspondía evaluar la póliza a la luz de los principios interpretativos antes expuestos, tomando en consideración que estas cláusulas se desfavorecen por desvirtuar el propósito principal de proteger al asegurado. <u>Maderas Tratadas v. Sun Alliance *et al.*</u>, supra, pág. 899.

De entrada, debo resaltar que la cláusula contenida en la póliza de seguro que ACE expidió a favor de North Janitorial convierte la póliza en prácticamente inoperante. Esto es así debido a que los "servicios profesionales" que se excluyen de la cubierta son precisamente los servicios que presta la empresa asegurada, según lo describe la propia póliza.[12] Por lo tanto, no podemos llegar al absurdo de

---

[12] La primera página de la póliza en controversia expresa que el tipo de negocio del asegurado ("Business of Insured") es **servicios de limpieza** ("Janitorial Services"). Por otra parte, la póliza contiene una cláusula de exclusión de servicios profesionales que dispone lo siguiente:

Description of Professional Services:
**JANITORIAL SERVICES**

[…]

validar una cláusula que de su faz hace ineficaz el resto de la póliza. No obstante, debido a que la Mayoría optó por ese camino, veamos si aun bajo la interpretación que sugieren aplica la cláusula de exclusión.

ACE –la aseguradora– tenía el peso de probar que la cláusula de exclusión anuló la cubierta de la póliza. Echandi Otero v. Stewart Title, supra. Para intentar demostrar que North Janitorial llevaba a cabo un servicio profesional de limpieza, excluido por la cubierta, ACE acompañó a su solicitud de sentencia sumaria únicamente lo siguiente: (1) una declaración jurada de Alfonso García Dávila, representante de reclamaciones de ACE y (2) una copia de las pólizas de seguro.[13] Además, descansó en el hecho de que North Janitorial admitió que se dedica a brindar servicios de limpieza especializados a hospitales. Esa evidencia no era suficiente para probar las alegaciones de la solicitud y disponer sumariamente del pleito a favor de ACE. Del récord no surge prueba que acredite las tareas específicas que realizaba North Janitorial en el hospital. Ni siquiera obra en el expediente una copia del contrato de

_____

> This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the providing or failure to provide the professional services described in the Schedule above, by any insured or any person whose acts the insured is legally liable.

[13] ACE anejó dos documentos adicionales: (1) un informe en "power point" del 28 de agosto de 2013 que preparó la Dra. Nora Chea de la División de Promoción de Calidad en el Cuidado de la Salud del Centro de Control y Prevención de Enfermedades y (2) una copia de una página de Internet donde se indican los servicios que ofrece North Janitorial. Sin embargo, estos no son pertinentes a nuestro análisis, debido a que este Tribunal resolvió no tomarlos en consideración "pues ninguno de los dos cuenta con las garantías necesarias de admisibilidad que exige la Regla 36.3(a)(4) de Procedimiento Civil de 2009, 32 LPRA Ap. V". Opinión, pág. 4, n.4.

mantenimiento y limpieza que North Janitorial suscribió con el hospital a partir del cual se puedan identificar las labores específicas que la empresa se obligó a realizar.

A pesar de la falta de prueba, la Opinión del tribunal clasificó los servicios de limpieza como profesionales y utilizó como fundamento: (1) que estos ocurrieron en un hospital y (2) que North Janitorial admitió que "es una entidad dedicada específicamente a la limpieza de instituciones de salud y cuenta con servicios de personal especializado que cumple con las normas de la industria". Opinión, pág. 21.

Ni el hecho de que los servicios se prestaron en un hospital ni la admisión de North Janitorial tienen el alcance jurídico que la Opinión les confiere. De entrada, prestar un servicio con parámetros rigurosos de limpieza no lo convierte en un servicio profesional automáticamente. No se puede eludir el cumplimiento con el estándar jurisprudencial: (1) que la labor requiera el uso de discernimiento a base de conocimiento especializado **y** (2) que la labor sea predominantemente intelectual en lugar de física o manual. Viruet *et al.* v. SLG Casiano- Reyes, supra. El expediente está huérfano de evidencia que demuestre que las tareas que realizó North Janitorial en el hospital requerían el uso de discernimiento, conocimiento especializado o habilidades intelectuales. Lo anterior, por la simple razón de que ACE no presentó evidencia alguna al respecto. Afirmar, de manera generalizada, que los hospitales requieren parámetros de higiene rigurosos no es

suficiente para concluir que todos los servicios de limpieza que se llevan a cabo en esas instituciones cumplen con los requisitos mencionados.

La admisión de North Janitorial de que presta servicios especializados de limpieza a hospitales tampoco tiene el peso que le adscribe la Opinión. Como vimos, no es suficiente que un servicio se describa como especializado. La jurisprudencia también requiere que para llevarlo a cabo se usen habilidades que sean predominantemente intelectuales en lugar de físicas. Viruet *et al.* v. SLG Casiano- Reyes, supra. Toda actividad comercial requiere un grado de conocimiento especializado para suplir una necesidad en el mercado, pero la jurisprudencia exige algo más –habilidad intelectual– para catalogarla como un servicio profesional. Según lo explicó un tribunal de distrito federal:

[M]any jobs require a degree of specialized skill that would not be commonly used by the average person: a plumber must know how to snake a drain and disassemble a disposal; a construction worker must know how to operate heavy machinery and employ specialized safety protocols. But that does not mean that every time someone engages in work beyond the ken of the average lay person, that service [qualifies as professional in nature].[14]

Lo anterior cobra mayor importancia en un caso como este donde los demandantes alegaron que North Janitorial fue negligente en la ejecución de labores manuales que consisten en **limpiar sábanas, recoger la comida y botar la basura.**[15]

---

[14] Burlington Ins. Co. v. PMI Am., Inc., 862 F. Supp. 2d 719, 742 (S.D. Ohio 2012) (citas omitidas).

[15] De las alegaciones de la demanda surge que "la limpieza [en el hospital] era inexistente, se encontraba desaseado, con la presencia de sábanas utilizadas con marcas de excremento viejo, permeaba un intenso olor desagradable y asqueante, había bandejas utilizadas con residuos de comida". *Segunda demanda enmendada*, Apéndice del *certiorari*, pág. 85.

Esas actividades no requieren un conocimiento, labor o destreza especializada, sino más bien una destreza física, por cuanto constituyen tareas manuales ordinarias que no requieren emplear un discernimiento profesional. Según se discutió, las tareas ordinarias no se consideran servicios profesionales a menos que su ejecución requiera destrezas intelectuales particulares o un entrenamiento especializado. Véase Auto-Owners Ins. Co. v. State Farm Fire & Cas. Co., 297 Ga. App. 751, 756, 678 S.E.2d 196, 201 (2009) ("[A] professional must perform more than an ordinary task to furnish a professional service; the task must arise out of the acts specific to the individual's specialized knowledge or training"). En vista de lo anterior, no es correcto concluir que los trabajos de limpieza que prestaba North Janitorial -a base de los cuales surgió la reclamación de la demanda- eran servicios profesionales únicamente por el hecho de que se llevaron a cabo en un hospital.

Aun dando por cierta una premisa para la cual no existe evidencia en el récord -que algunas de las labores por las que se demandó a North Janitorial constituían servicios profesionales- lo cierto es que varias de las alegaciones contra North Janitorial involucran servicios no profesionales. Eso bastaba para determinar que no procedía aplicar la exclusión hasta tanto se determinara en su momento los daños que el demandante podía probar y si estos sucedieron como resultado de servicios profesionales o no.

_____

Además, que "solo se sacaba la basura una vez al día y allí permanecían las batas vomitadas de un día para otro". Íd., pág. 102.

Véase <u>Hartford Cas. Ins. Co.</u>, supra, pág. 346 ("The complaint alleges breaches of professional and non-professional duties. Indeed, there are several allegations of negligence that do not arise from rendering professional services […] **The existence of potentially covered claims alone imposes upon the insurer a duty to defend until it is determined in the underlying action that the plaintiff cannot recover on those claims.** Because there are claims that are not excluded, Hartford has a duty to defend New Hope") (citas omitidas) (Énfasis suplido).

Conforme a todo lo anterior, era forzoso concluir que no contamos con evidencia que demuestre que North Janitorial: (1) brindaba un servicio de limpieza especializado (2) de acuerdo con una preparación intelectual particular. La aseguradora no probó que las reclamaciones de los demandantes contra North Janitorial están fundamentadas en servicios profesionales exceptuados de la póliza.

Como vimos, las cláusulas de exclusión en los contratos de seguros se deben interpretar restrictivamente a favor del asegurado. La interpretación que hace una Mayoría en la Opinión sobre el profesionalismo de los servicios de limpieza de North Janitorial no está sustentada en prueba y claramente no es la más favorable para el asegurado. Por el contrario, constituye una interpretación general de lo que se considera un servicio profesional y limita, de manera improcedente, la cubierta de la póliza.[16] Esto facilitará

---

[16] <u>Newman v. Scottsdale Ins. Co.</u>, 370 Mont. 133, 145, 301 P.3d 348, 356 ("Although Scottsdale relies on the "professional services" exclusion in

que las aseguradoras adopten cláusulas de exclusión ambiguas y carentes de detalles en cuanto a su contenido. Ello, en detrimento de la finalidad primordial de un seguro. En particular, el análisis de la Mayoría **valida la cláusula de una póliza de seguro que excluye de su cubierta el propio servicio que presta la compañía asegurada**. Y lo que es más preocupante aún, lo hace en ausencia de prueba suficiente que apoye tal conclusión. En vista de lo anterior, disiento respetuosamente.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta

---

its policy as a basis for denying coverage, the policy does not define the terms "professional," "professional services," or "professional exposures," so as to alert the insured concerning what services are covered and what services are excluded. At a minimum, this renders the coverage confusing and ambiguous. It is well-established that any ambiguity in an insurance policy must be construed against the insurer").